COMMISSIONERS OF HIGHWAYS OF THE TOWN OF COLFAX

v.

COMMISSIONERS OF EAST LAKE FORK SPECIAL DRAINAGE DISTRICT.

*Filed at Springfield April 5, 1889.*

1. DRAINAGE LAW—*action—to recover for benefits to public highway.* Under the Drainage law, the drainage commissioners may assess the public roads in their district such sums as they will be benefited, in proportion to the benefits to the other lands, and may recover judgment upon such assessments in an action of debt against the highway commissioners of the town in which such roads may lie.

2. SAME—*pleading—of the declaration in such case.* In an action of debt by the commissioners of a union drainage district, against the commissioners of highways, to recover for special assessments made against the public roads of the defendants' town, the declaration alleged, in substance, the organization of the plaintiffs as a special drainage district; that they assessed to such public roads such sum as was just and equitable for such roads to pay, in proportion to the benefits received by them by the work of drainage; that they estimated the amount of benefits to the entire district, including those to the roads, giving the relative proportion assessed to such roads and the whole district, which ratio was 3-100; that on a hearing of objections, after due notice to all parties interested, the commissioners filed their certificate of confirmation, from which no appeal was taken by the defendants; that the plaintiffs, having duly divided the district into sub-districts, did assess the public roads in each sub-district by classifying them in the same manner as was done for work on the main ditch, giving the proportions and ratios, and alleging the appearance of the defendants on the hearing of objections and the confirmation of the classification, and the failure of any one to appeal, and showing the refusal of the defendants to pay the assessments on the roads: *Held,* on general demurrer, that the declaration was sufficient to support a judgment against the defendants.

3. SAME — *assessment of benefits—for what purposes—as to public highways.* The formation of drainage districts is not limited by the constitution (art. 4, sec. 3,) and the law of 1885 to agricultural or sanitary purposes, in the sense that no lands can be specially assessed unless they shall be found to be benefited specifically for agricultural or sanitary purposes, as this would exclude all land held for residences, roads and timber land. The improvement of land for highways or for residences, and for timber, by proper drainage, is, in the sense of the law, an improvement for agricultural and sanitary purposes.

4. Neither the constitution nor the statute requires that the benefits shall be for agricultural or sanitary purposes, but they require that the district shall be organized for these purposes. The only limitation in respect to benefits is, that the drains, etc., shall be constructed and maintained by "special assessments upon the property benefited thereby,"—that is, benefited by constructing or maintaining the drains, etc.

5. If a highway over marshy or swampy ground shall be drained, it will be improved, and the public will be benefited thereby, and that will be done by the drainage district which it was the duty of the highway commissioners to have done, and therefore the law imposes no new burden on the road district.

6. SAME—*question of benefits—whether open to inquiry.* In an action by drainage commissioners against highway commissioners, to recover for special assessments upon public roads, the question of whether the roads are benefited in fact, is not open to inquiry. If the commissioners err in their estimate, the remedy is by appeal from their order of confirmation.

7. SAME—*assessment upon highways—notice.* Where any public roads are assessed their proportional share of benefits arising from a drainage system, the commissioners of highways are entitled to the same notice as individual land owners. The giving of such notice gives jurisdiction to the drainage commissioners to act.

8. SAME—*classification of lands—including highways.* The drainage law, requiring the lands benefited to be classified, includes highways, which form a class of themselves, distinct from lands in general. When they are assessed pursuant to section 40 of the Drainage act, no other classification is needed.

9. SAME—*expenditure of funds—how far limited, territorially.* The power of a drainage district in several townships to expend money raised by special assesments, is co-extensive, territorially, with its power to assess and collect. The case of *Hundley* v. *Park Comrs.* 67 Ill. 559, holding that money raised by assessment in one town can not be expended in another, has no application to a municipal corporation embracing parts of several townships.

10. JUDGMENT *against municipal corporation—remedy for enforcement.* In a suit by a drainage district against highway commissioners, on special assessments on their highways for benefits thereto, the judgment against the highway commissioners is not a charge on the highways so benefited, or any other property. It is simply a charge against the municipality, to be paid from its revenues. Payment may be enforced by *mandamus,* after judgment fixing the amount due.

11. Where, in such suit, the judgment awards an execution, the error will be a harmless one, as the commissioners of highways have no property liable to execution, and that part of the judgment will be treated as a nullity.

APPEAL from the Circuit Court of Champaign county; the Hon. C. B. SMITH, Judge, presiding.

This was an action of debt, for the amount of benefits assessed against certain highways. The defendants demurred to the declaration, but the court overruled the demurrer, and the defendants electing to stand by their demurrer, and refusing to answer over, judgment was given for the plaintiffs.

The declaration alleges, that plaintiff, at the time mentioned therein, was a duly organized drainage district under the act of the General Assembly entitled "An act to provide for drainage for agricultural and sanitary purposes," etc., approved June 27, 1885; that certain public roads in the said town of Colfax are within the said organized district and the sub-districts of said drainage district; that the said commissioners of said district were, on, to-wit, the 7th day of June, 1887, of opinion that the said public highways of said town of Colfax, within said drainage district, would be benefited by the construction of the work in said district, etc., and being of such opinion, did assess the said public roads such sums as would be just and equitable for said public roads to pay, in proportion to the benefit received, etc.; that said commissioners of said drainage district did then and there determine, by estimating the amount of benefit to the entire district, including the benefits to said public roads, and also the benefit to said public roads, the fractional figures of 3-100 expressing the ratio between the sum of benefits for the whole district and the sum found to be the benefit to the said public roads, which said fractional figure 3-100, so fixed as aforesaid, does express the proportional part of the corporate taxes of the said district to be paid by the said public road; alleges that said fractional figures were duly entered on the classification made and filed with the county clerk on the 27th day of January, 1887; that the commissioners fixed the time and place for hearing objections to said classification; that they issued notices of the

time and place of said meeting, and addressed them to all persons interested,—which notices stated the object of said meeting, and which notice was duly published as required by law, etc., and copies of the same mailed to commissioners of highways of Colfax township; that the commissioners of said drainage district met at the time and place designated in said notices, and heard all objections to said classification, and after having heard all objections and made all corrections that justice required, sustained the said classification, and did confirm the said figure of 3-100 against the defendants, and did make an order of such confirmation, and filed the same with the county clerk on the 18th day of February, 1887, from which the defendants did not appeal, and the same remains now in full force, and said classification and order of confirmation are duly recorded in the drainage record, etc.; that the commissioners of said drainage district filed with the clerk their certificate, which was duly recorded, requiring $35,000 to be raised by special assessment upon the lands of said district which were benefited; that on computations made by the said clerk, the commissioners made out and filed a tax list, as required by law, in which said tax list, upon the basis of said figure 3-100 classification and the said $35,000 levy, aforesaid, the amount assessed against the defendant for benefits to said public roads was and is $1050, which said assessment roll or tax list was confirmed by said commissioners, and on the 2d day of March, 1887, duly recorded in the drainage record, etc., and that the said sum of $1050, with eight per cent interest from said 2d day of March, 1887, now remains due and unpaid; and the said drainage commissioners having duly divided the said drainage district into sub-districts, and certain public roads in said town of Colfax being within the sub-districts Nos. 3, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15 and 16, and on the 28th day of October, 1887, the said commissioners of said drainage district being of opinion that the said public highways in said town of Colfax within each of said sub-dis-

tricts numbered as aforesaid, would be benefited by the work in said sub-districts, said drainage commissioners did assess to such public roads such sums as would be just and equitable for said public roads to pay, in proportion to the benefits received by them by such work; and the said commissioners did then and there determine, by estimating the amount of benefits to each entire sub-district, including the benefits to said public roads in each respective sub-district and also the benefits to such public roads, the fractional figures in each sub-district expressing the ratio between the sum of the benefits for each district and the sum found to be the benefit to the public roads in each sub-district, which said fractional figures in said respective sub-districts are as follows: Sub-district No. 3, one-twentieth; No. 5, one-thirtieth; No. 6, one-sixteenth; No. 7, one-fortieth; No. 8, one-fortieth; No. 9, one-twentieth; No. 10, one-seventh; No. 11, one-fifteenth; No. 12, one-sixteenth; No. 13, one-twentieth; No. 14, one-eighth; No. 15, one-eleventh, and No. 16, one-fourteenth, and were fixed as aforesaid, and do express the proportional part of the corporate taxes of the said sub-districts, respectively, to be paid by said public roads, which said fractional figures the said drainage commissioners did respectively place against the public roads of said town of Colfax, in each sub-district, in their tables of classification in said sub-districts, and duly filed the same with the county clerk; that the commissioners fixed the time and place in each of said sub-districts to hear the objections to said classification, showing the places and times for such hearing in each of said districts; that they fixed a time and place for the hearing of the general and final objections to said classification; that they issued notices of the time and place of said meeting, and published the same, and sent notices, as required, to all persons interested; that the commissioners met, at the respective times and places in said notices mentioned, to hear all objections, etc., at which time they made such corrections as they deemed just, and that de-

fendants appeared and objected to said classification; that the commissioners, after hearing the objections, confirmed the classification against the defendants, the figures remaining as above stated; that on the 26th day of September, 1887, they filed their order of confirmation with the county clerk; that it was duly recorded, and now remains in force and effect; that defendants did not appeal; that the commissioners filed their certificate with the clerk, which was recorded, requiring the following sums for the said sub-districts: No. 3, $642; No. 5, $2651; No. 6, $1491; No. 7, $3612; No. 8, $1910; No. 9, $2577; No. 10, $153; No. 11, $1062; No. 12, $1100; No. 13, $3568; No. 14, $2696; No. 15, $244; No. 16, $1721,—to be raised by special assessment upon the lands benefited in said sub-districts; that the clerk computed and apportioned the said sums to the names of the owners, according to the acreage and figure of classification, the amount or proportion of benefits; that upon this computation the commissioners made out their tax list as required by law, and the amounts assessed against the defendants in each of said sub-districts for benefits to said public roads were as follows: Sub-district No. 3, $32.10; No. 5, $88.37; No. 6, $93.19; No. 7, $90.30; No. 8, $47.75; No. 9, $128.85; No. 10, $21.86; No. 11, $70.80; No. 12, $68.75; No. 13, $178.40; No. 14, $337; No. 15, $22.18; No. 16, $122.93; that said amounts were entered on tax list and confirmed by said commissioners. Said tax list filed with the clerk on the 28th day of October, 1887, recorded in the drainage record, is in full force and effect. Said sums, with eight per cent interest from October 28, 1887, are now due and unpaid. The debt alleged to be due is $2352.48, and damages alleged to have been sustained, $1000.

The error assigned is the overruling of the demurrer.

Messrs. GERE & PHILBRICK, for the appellants.

Mr. FRANCIS M. WRIGHT, for the appellees.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

The first contention in the printed argument filed on behalf of appellants is, since the purpose of the formation of drainage districts is limited by the constitution (art. 4, sec. 3,) and by the statute (Laws 1885, p. 77, *et seq.*,) to "agricultural or sanitary purposes," no lands can be assessed as specially benefited unless they shall be found to be benefited for agricultural or sanitary purposes. If by this it is intended that the lands benefited shall be directly devoted to the raising of agricultural crops or to sanitary uses, and that the benefits shall consist alone in improving the capacity to produce agricultural crops or the efficiency of the property for sanitary uses, it is manifestly too narrow, for this would exclude residences, out-buildings, yards, lands kept for timber, and all unimproved lands; and yet it is plain, that in the ordinary farm the residence, out-buildings, yards, and lands kept for timber, are, in a general sense, devoted to agriculture, for each is indispensable to the farmer in operating his farm; and the unimproved lands which are too wet to be devoted to the raising of crops, will, by being drained, be fitted therefor, and thus will be, literally, improved for agricultural purposes. So, too, it is obviously impossible to cultivate lands, save and market crops, procure family supplies, etc., in an agricultural community, without highways. They must be constantly used for agricultural purposes, and therefore when, by improvement, they are benefited, they are literally benefited for agricultural purposes, although it may be for other purposes also. On this principle, we held in *Spear* v. *Drainage Commissioners*, 113 Ill. 632, that on the trial of an appeal from the assessment of benefits to a party's land by a proposed drainage, the jury may take into consideration, not only the benefit to the party's land assessed, by the drainage of the same, but also the benefit he may derive by the drainage of a slough which separates him from his other land, and thereby obviates the necessity of his bridging

the slough to reach such other land, and that there is no error in admitting evidence showing such additional benefit.

Moreover, we are of opinion that neither the constitution nor the statute requires that the *benefits* shall be for agricultural or sanitary purposes. They require that the districts shall be organized for those purposes, but the only limitation in respect to benefits is, that the drains, etc., shall be constructed and maintained by "special assessments upon the property benefited thereby,"—that is, benefited by constructing or maintaining the drain, etc. If a highway over marshy or swampy ground shall be drained, it will be improved, and the public will be benefited thereby. That will be done by the drainage district which it was the duty of the highway district to do, and therefore it imposes no burden upon the highway district that it shall be required to contribute, in proportion to the benefit thus received, for the improvement whereby it is produced, but, upon the contrary, it ratably distributes the cost of a public improvement in accordance with the spirit of our constitution. *County of McLean* v. *City of Bloomington*, 106 Ill. 209, and cases there cited; *Chicago and Northwestern Railway Co.* v. *The People ex rel.* 120 id. 104.

We have nothing to do with the question of the fact of benefit in the present case. If, in legal estimation, there may have been benefit to the highway for which compensation should be made, it is sufficient. The commissioners had jurisdiction to act, and if they erred, it should have been corrected in another form of proceeding. *Keigwin* v. *Drainage Commissioners*, 115 Ill. 347; *Chicago and Northwestern Railway Co.* v. *The People ex rel. supra.*

It is next contended, that there is no point or time when jurisdiction is obtained of commissioners of highways. This is a misapprehension of the effect of the statute. Section 40 of the act approved June 27, 1885, provides, that "if, in the construction of said work, any public highway * * * will be benefited, the commissioners may assess to such public

road * * * such sum or sums as will be just and equitable for such public road * * * to pay, in proportion to the benefits received, which shall be determined by estimating the amount of benefits to the entire district, including the benefits to such * * * public road, and also the benefit to * * * the public road; then the fractional figures expressing the ratio between the sum of the benefits for the whole district, and the sum found to be the benefit to the * * * public road, shall express the proportional part of the corporate taxes of the district to be paid by such * * * public road. * * * Such proportional classification shall be subject to like review and appeals as is provided for individual land owners." In order that "such proportional classification shall be subject to like review and appeals as is provided for individual land owners," it would follow that those in charge of the public roads,—that is, the commissioners of highways,—(see 2 Starr & Curtis' Stat. chap. 121, sec. 2,) must have the same notice as individual land owners,—and it is here alleged that such notice was given. Jurisdiction, therefore, was obtained when this notice was given.

Again, it is objected that there is no method for the classification of anything but lands. Lands are to be classified; but highways form a class of themselves, distinct from lands in general, and so when they are assessed pursuant to section 40, no other classification can be needed.

An objection is urged, based on *Hundley* v. *Park Comrs.* 67 Ill. 559, that money raised by assessment in one township can not be expended in another. That case can have no application here. There the assessments were made by two distinct municipal corporations, while here it is made by but one corporation. For the purpose of any question now before us, no other municipal corporation than this drainage district has any interest in the collection or expenditure of this assessment, and its power to expend is co-extensive, territorially, with its power to assess and collect.

It has been suggested by some members of the court, in the consideration of this case, that it might be thought that *Craw* v. *Village of Tolono et al.* 96 Ill. 255, is opposed to the present judgment. To avoid any misapprehension that might otherwise arise in that respect, we deem it advisable to say that a majority of the court hold that the cases are, in principle, dissimilar. That was a suit against a natural person, and, upon a judgment rendered under the facts of that case, an execution would have issued which might have been levied upon any property of the defendant. This, however, is a suit against a municipal corporation, and upon the judgment rendered no execution can issue. The tax here sued for, though levied because of the ownership of certain property, is not a charge against that or any other specific property, but it is simply a charge against the municipality, to be paid from its revenues. The amount, says the statute, shall be paid out of the road and bridge tax of the town or district in which the public highway, or part benefited, lies. (Latter part of section 40 of act approved June 27, 1885.) Since we have held that this is a proper mode of distributing a public burthen, (*Higgins* v. *Chicago,* 18 Ill. 276, *Scammon* v. *Chicago,* 42 id. 192, *County of McLean* v. *City of Bloomington,* 106 id. 209,) it must follow that should payment not be made, the commissioners can be compelled, by *mandamus,* to make it. '(*City of Olney* v. *Harvey,* 50 Ill. 453.) But before applying for *mandamus* there must be a judgment at law determining the amount due. *The People ex rel.* v. *Board of Supervisors,* 50 Ill. 213. See, also, *County of McLean* v. *City of Bloomington, supra.*

The transcript before us shows a judgment awarding execution, which we have seen is unauthorized. But it is a harmless error, for the reason that the commissioners have no property which can be seized and sold upon execution. That part of the judgment is a nullity, and it will be treated as stricken out, and the judgment, thus amended, is affirmed.

*Judgment affirmed.*

Mr. JUSTICE BAILEY, dissenting.