HENRY E. BADGER *et al.*

*v.*

THE INLET DRAINAGE DISTRICT.

*Filed at Ottawa May 12, 1892.*

1. DRAINAGE DISTRICT—*a corporation with limited powers.* Although a drainage district is classed as a municipal corporation, it is organized merely for a special and limited purpose, and its powers are restricted to such acts as are deemed essential for the accomplishment of such purpose. It is only authorized to receive funds for the specific object for which it is formed, and it can do that in no other mode than by special taxation upon the property benefited, which can in no case exceed the benefits to the land assessed.

2. DRAINAGE LAW — *assessments, how made.* By section 9 of the Drainage act of 1879 the commissioners are required to determine the probable cost of the proposed work, including all incidental expenses and the cost of the proceeding; and by section 11 it is provided that if they shall find that the proposed work, or such part of the same as will be satisfactory to the petitioners, can be done at a cost and expense not exceeding such benefits, they shall have the proper surveys, profiles, plans and specifications thereof made, and report their conclusions, and a copy of such surveys, etc., to the court which appointed them.

3. By section 13 notice is required to be given to those interested, of the filing of the report, and on application for confirmation of such report they are authorized to appear and contest the confirmation thereof, or to show that the same ought to be modified in any particular, and may offer any competent evidence in support thereof. Under this section every property owner is entitled to be heard on every material question affecting the character of the improvement and its cost.

4. By section 18 it is provided that the jury, in assessing damages and benefits to result from the proposed work, shall award and assess the damages and benefits in favor of and against each tract separately, in the proportion in which such tract of land will be damaged or benefited, and that in no case shall any tract be assessed more than its proportionate share of the estimated cost of the work and expenses of the proceeding, nor in any greater amount than it will be benefited; and the action of the jury in this respect may be contested by the land owner affected, and an appeal is allowed therefrom.

5. SAME—*facts essential in determining damages and benefits.* It is indispensable to the determination of the question of damages and

benefits to different tracts of land, and proportioning them upon the different tracts in the district, that every fact materially affecting the extent and character of the improvement, and a reasonable approximation of the cost of the same, shall be then before the jury.

6. DRAINAGE COMMISSIONERS—*powers—notice to land owners.* The statute nowhere gives the commissioners any authority to do any act materially affecting the character or extent or cost of the improvement, as to which there is not provided there shall be notice to the land owner affected, and opportunity to him to be heard.

7. SAME—*power to contract.* The general power given by section 28 of the act to the commissioners to contract and be contracted with, etc., and to perform all such acts and things as may be necessary to be done to carry out the purpose of the act, is to be construed in connection with the preceding sections, and is not a modification of the preceding restrictions upon the power to contract. It is but a grant of power to contract in subordination to such restrictions.

8. Section 36 of the act provides that the commissioners may do any and all acts that may become necessary in and about the surveying, laying out, constructing, repairing, altering, enlarging, cleaning, protecting and maintaining any drain, etc., including all necessary bridges, crossings, etc., clearing out and removing obstructions from natural or artificial channels or streams within or beyond the limits of the district, procuring riparian rights and water powers by agreement with the owners thereof, and "may use any money in their hands arising from assessments for that purpose:" *Held,* that as all things named in this section may be done under the general power to contract, it can not be held as an enlargement of the powers granted by section 28, but must be held to be an additional limitation or restriction on those powers.

9. SAME—*power to borrow money.* The power given the commissioners by section 38 to borrow money is expressly limited, not to exceed the amount of the assessment unpaid at the time of borrowing, and its payment is secured only by making it a lien upon the assessment.

10. SAME—*prerequisites of contract for extending drain.* After the commissioners of a drainage district had made an assessment of benefits for a certain improvement for the purpose of drainage, and had collected and used the same, they made a contract with B. & Son, whereby the latter agreed to remove dams and abutments on a certain creek for $1700. On the completion of the work the commissioners gave the contractors seventeen orders, of $100 each, which were not paid for want of funds, and made an assessment on the lands of the district for $1700, the collection of which was enjoined, and suit was brought on the orders by the contractors : *Held,* that before the commissioners could make any contract they were required to present to the court appointing them their report recommending the enlargement

of the improvement for which they were previously appointed, accompanied by plans, profiles and an estimate of the cost, including the removal of the dam, etc., and thus afford to land owners an opportunity to be heard upon the question of confirmation of such report, and that the contract being void, no recovery could be had on it.

11. SAME—*whether estopped to deny the validity of a contract after benefits received.* Where the commissioners make a void contract for the removal of a dam, abutments, etc., in a creek or water-course, the fact that they may, after the completion of the work, avail of the removal and enjoy the benefit to be derived therefrom, will not estop them from denying the validity of the contract.

12. The doctrine that when a corporation has received benefits under a contract which is merely *ultra vires* it should pay for such benefits, is applied only to cases where there is power to do the particular thing, only it is not authorized to be done in the way it is done. The doing of the thing in a proper way is a legitimate charge upon the resources of the municipality, and so when it is done and accepted and enjoyed by the municipality it will get what it had authority to get in a different way, and therefore it should pay for what it would have had to pay had it been gotten in the right way.

13. The commissioners of a drainage district have no power to contract for an improvement or for work not described in their report and accompanying plans and profiles, and if they do, the contract will not bind them or the district they represent.

14. The commissioners of a drainage district can not, by their acts and conduct, enlarge their powers over the property within the district without the knowledge and consent, express or implied, of the owners of that property. Therefore, although the property owners are not parties to a suit against the district, yet because there can be no judgment unless it can be enforced against their property, it must follow that unless they are estopped to deny the right to a judgment, the commissioners can not, in a suit against the district, be estopped to do so.

15. JUDGMENT AGAINST A DRAINAGE DISTRICT—*essentials of the claim —judgment, how satisfied.* To entitle a party to a judgment against a drainage district, it must appear that he has a legal claim, not merely against the commissioners, but as against the real estate within the district to be benefited by the improvement, for the reason that the judgment can only be satisfied by a special assessment upon that property.

APPEAL from the Appellate Court for the Second District;— heard in that court on appeal from the Circuit Court of Lee county; the Hon. JOHN D. CRABTREE, Judge, presiding.

Mr. J. E. LEWIS, and Mr. A. K. TRUSDELL, for the appellants:

Appellee is estopped to set up that it is not bound by the acts of its commissioners in making the agreement with appellants and giving the orders. Laws 1879, p. 129, secs. 28, 36.

Appellee, by receiving and retaining the consideration for which the orders were given, can not now set up want of power in the commissioners to make the contract for which the orders were given.    Field on Corp. sec. 273; *East St. Louis* v. *Gaslight Co.* 98 Ill. 415.

If a contract made by a corporation is not in violation of the charter or some statute prohibiting it, and the corporation has by its acts induced a party relying upon such promise, and in execution of the contract, to expend money and perform his part of the contract, the corporation is liable. *State Board of Agriculture* v. *Railway Co.* 47 Ind. 427; *Bridge Co.* v. *Frankfort,* 18 B. Mon. 41; *Gas Co.* v. *San Francisco,* 9 Cal. 453; *Argentine* v. *San Francisco,* 16 id. 655; *Allegheny City* v. *McClerkin,* 14 Pa. St. 81; *Parish* v. *Wheeler,* 22 N. Y. 258; *Bank* v. *Bank,* 21 id. 490; *Railroad Co.* v. *Thompson,* 103 Ill. 187; *Darst* v. *Gale,* 83 id. 140; *Bradley* v. *Ballard,* 55 id. 413; *Millard* v. *Female Academy,* 8 Bradw. 341.

Mr. A. C. BARDWELL, for the appellee:

Inability to contract may be proven under the general issue. *Streeter* v. *Streeter,* 43 Ill. 164.

The drainage district is a *quasi* corporation of limited powers, similar to towns and school districts. *Commissioners* v. *Kelsey,* 120 Ill. 482; *Elmore* v. *Drainage Comrs.* 32 Ill. App. 122.

Drainage districts therefore have no power, other than what is expressly conferred by statute, to create indebtedness, and the means provided by statute are the only ones to be resorted to. *Brauns* v. *Peoria,* 82 Ill. 11; *Commissioners* v. *Newell,* 80 id. 587; Cooley on Taxation, 209; *Commissioners* v. *O'Sulli-*

*van,* 16 Bradw. 34; *Glidden* v. *Hopkins,* 47 Ill. 525; *Stevens* v. *School Directors,* 87 id. 255; *Directors* v. *Fogleman,* 76 id. 190; Cooley's Const. Lim. *241.

Defendant is not estopped from setting up the defense insisted upon. *Directors* v. *Fogleman,* 76 Ill. 190; *Commissioners* v. *O'Sullivan,* 16 Bradw. 34.

Parties dealing with a municipal corporation are charged with knowledge of all deficiencies in its power to contract. Dillon on Mun. Corp. sec. 372; Cooley's Const. Lim. *196.

The provisions of the statute imply want of power in drainage districts to create debts in excess of assessments or funds on hand. Levy act, secs. 36-38.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

Inlet drainage district was organized pursuant to the provisions of "An act to provide for the construction, reparation and protection of drains, ditches and levees across the lands of others, for agricultural, sanitary and mining purposes, and to provide for the organization of drainage districts," approved and in force May 29, 1879. (Laws of 1879, p. 120.) Assessments were made and confirmed in November, 1879, as provided by the act. Afterwards, on the 1st of June, 1882, the commissioners of the district made an agreement with Henry E. Badger and Warren H. Badger, doing business under the firm name of H. E. Badger & Son, whereby the latter agreed to remove their dam across Inlet creek, and also the mason work, stone abutments and flume in connection with the dam, and in consideration thereof the commissioners agreed to pay them $1700, and to levy an assessment upon the lands in the drainage district to make the payment, and the commissioners thereupon, because of such agreement, drew and delivered to H. E. Badger & Son seventeen orders, of $100 each, on the treasurer of the district. H. E. Badger & Son removed the dam and other obstructions as the agree-

ment required. In March, 1883, the commissioners made an assessment on the lands of the district for $1700, to pay for removing the dam, etc., but the collection of this was enjoined at the instance of one of the land owners within the district, and no other money was ever levied upon the lands of the district for that purpose. The orders were presented to the treasurer of the district and payment demanded, which was refused, because there was no money in his hands belonging to the district. The present suit was then brought upon the orders against the drainage district. By agreement of parties the cause was tried by the court without the intervention of a jury, and judgment was rendered by the court in favor of the defendant.

The question presented for our consideration arises on rulings of the circuit court, in which that court refused to hold that the orders are valid charges upon the lands of the district. Although we have held that a drainage district is to be classed as a municipal corporation, (*Commissioners* v. *Kelsey*, 120 Ill. 482,) yet we have also held that such a district is organized merely for a special and limited purpose; that its powers are restricted to such as the legislature has deemed essential for the accomplishment of such purpose, and that it is only authorized to raise funds for the specific object for which it is formed, and that it can do that in no other mode than by special assessments upon the property benefited, which can in no case exceed the benefits to the lands assessed. (*Elmore* v. *Drainage Comrs.* 135 Ill. 277.) So, also, we have held, where the statute prescribes a mode and purpose of municipal taxation, it must be pursued. No other mode or purpose can be substituted by those who exercise the power. *Webster* v. *The People*, 98 Ill. 343.

By section 9 of the act under which appellee is organized, the commissioners are required to determine, among other things, "the probable cost of the proposed work, including all incidental expenses, and the cost of the proceeding therefor,"

35—141 ILL.

and it is provided by section 11, that "if the commissioners shall find that the proposed work, or such portion of the same as will be satisfactory to the petitioners, can be done at a cost and expense not exceeding such benefits, they shall proceed to have the proper surveys, profiles, plans and specifications thereof made, and shall report their conclusions, and a copy of such surveys, profiles, plans and specifications, to the court which appointed them." Section 13 requires notice to be given to those interested of the filing of the report, and upon the day when application is made to confirm the report they are authorized to "appear and contest the confirmation thereof, or show that the same ought to be modified in any particular, and may offer any competent evidence in support thereof." Under this, every property owner is entitled to be heard on every material question affecting the character of the improvement and its cost. And it is further provided in section 18, that the jury, in assessing damages and benefits to result from the improvement, "shall award and assess the damages and benefits in favor of and against each tract separately, in the proportion in which such tract of land will be damaged or benefited; and in no case shall any tract of land be assessed for benefits in a greater amount than its proportionate share of the estimated cost of the work and expenses of the proceeding, nor in a greater amount than it will be benefited by the proposed work, according to the best judgment of the jury." The action of the jury in this respect may be contested by the land owners affected, and an appeal is allowed therefrom. See secs. 20, 21, 23.

It is manifest that it is indispensable to the determination of the questions of damages and benefits to different tracts of land, and proportioning them upon the different tracts in the district, that every fact materially affecting the extent and character of the improvement, and a reasonable approximation of the cost of the improvement, shall be then before the jury. It is quite probable that it was not contemplated that

the power of the commissioners to make an assessment would
be exhausted by the first assessment, but the statute will be
searched in vain for authority for the commissioners to do any
act materially affecting the character or extent or cost of the
improvement, as to which there is not provided there shall be
notice to the land owners affected, and opportunity for them
to be heard. It is provided in section 28, that "upon the
organization of said drainage district the commissioners so
appointed shall, from thenceforth, have power to contract and
be contracted with, sue and be sued, plead and be impleaded,.
and do and perform, in the corporate name of said district,
all such acts and things as may be necessary for the accom-
plishment of the purposes of this act." But this is to be
construed in connection with the preceding sections, so as to
give effect to each, and when this is done, it will be seen that
it is not a modification of the preceding restrictions upon the
power to contract, but simply a grant of power to contract in
subordination thereto. It is also provided in section 36, that
"the commissioners, when qualified in pursuance of this act,
may do any and all acts that may be necessary in and about
the surveying, laying out, constructing, repairing, altering,
enlarging, cleaning, protecting and maintaining any drain,
ditch, levee or other work for which they shall have been ap-
pointed, including all necessary bridges, crossings, embank-
ments, protections, dams and side-drains, clearing out and
removing of obstructions from natural or artificial channels
or streams within or beyond the limits of the drainage district,
procuring or purchasing riparian rights and water powers by
agreement with the owners thereof, and may use any money
in their hands arising from assessments for that purpose."
But since all this may be done under the general power to
contract, it can not be held as an enlargement of the powers
granted by section 28, and must therefore be held to be an
additional limitation or restriction on those powers, and the
meaning would therefore have been precisely the same, and

more obvious, if the phraseology had been that the commissioners "may use any money in their hands arising from assessments," for these purposes, repeating them after instead of before this language.   It is still further manifest that this section is but an additional limitation or restriction, and not an enlargement, of the powers intended to be conferred by section 28, by the *provisos* which follow the language quoted, requiring public lettings in certain cases to the lowest bidder, prohibiting the commissioners from being interested in the contracts, and protecting water-courses, etc., from injury by the improvement.   Power is given the commissioners in section 38 to borrow money, but it is expressly limited to not exceed the amount of assessment unpaid at the time of the borrowing, and its payment is secured only by making it a lien upon the assessment; and by section 39, "all damages over and above the benefits to any tract of land shall be payable out of the amounts assessed against other lands for benefits."

It results that, in our opinion, when this drainage district was first organized there was no power in the commissioners to contract for the removal of the dam, etc., of the appellants, and that before the commissioners could make any contract in that respect they must present to the court appointing them a report recommending the enlargement of the improvement for which they were previously appointed, accompanied by plans, profiles and an estimate of costs, including the removal of the dam, etc., and afford to the land owner of the district an opportunity to be heard upon the question of confirming such report.   This is expressly required by section 37 of the amendatory act, approved June 30, 1885, (Laws of 1885, p. 124,) and under the prior act there is, as has been seen, no authority otherwise for enlarging the enterprise, or including other and different work than that specified in the report and accompanying plans, profiles and estimates, upon which the district was organized in the first instance.

There was evidence showing that the commissioners had availed of the removal of the dam, etc., and it is contended this estops them to deny the validity of the contract for its removal, and *East St. Louis* v. *East St. Louis Gaslight and Coke Co.* 98 Ill. 415, is relied on in support of that contention. It was held in that case, that where the contract of a municipal corporation has no element of illegality, the objection made to it only alleging a defect of power in respect to the terms of its duration, the doctrine that where a corporation has received benefits under a contract which is merely *ultra vires* it shall pay for those benefits, should apply to the municipal corporation with equal force as in any case of a private corporation. But in such cases there is power to do the particular thing, only it is not authorized to be done in the way it is done. The doing of the thing in a proper way is a legitimate charge upon the revenues of the municipality, and so when it is done, and is accepted and enjoyed by the municipality, the municipality gets what it had authority to get in a different way, and it should therefore pay for it what it would have had to pay had it got it in the right way. In the present case, however, if we are right in the views we have expressed, there was no power in the commissioners to do the particular thing,—namely, remove the dam, abutments, etc., —for the reason that the powers of the commissioners are limited to the work described in their report and accompanying plans and profiles, etc., and that work is not within the description therein. Moreover, to entitle appellants to a judgment, it must appear that they have a legal claim, not merely as against the commissioners, but as against the real estate within the district benefited by the improvement, for if judgment be rendered it can only be satisfied by a special assessment upon that property. It can not, therefore, be conclusive as to the right of appellants to recover, merely to show that the commissioners, as individuals, have done or said that which admits the right of appellants, for they can not, by

their acts and conduct, enlarge their powers over the property within the district without the knowledge and consent, express or implied, of the owners of that property. *Schaeffer et al.* v. *Bonham et al.* 95 Ill. 368; Bigelow on Estoppel, (5th ed.) 466, 467, and authorities cited in notes 1 and 2. And therefore, although the property owners of the district are not parties to the suit, yet, because there can be no judgment unless it can be enforced against their property, it must follow that unless they are estopped to deny appellants' right, the commissioners can not, in suits like the present, be estopped to do so. The evidence in the record is insufficient to prove an estoppel as to the owners of real estate within the district benefited by the improvement, and, indeed, there does not seem to have been any effort upon the trial to make such proof. The judgment is affirmed.

*Judgment affirmed.*