SARA E. ROBY *et al.* v. THE SHUNGANUNGA DRAINAGE
DISTRICT, *etc., et al.*

No. 15,771.    (95 Pac. 399.)

SYLLABUS BY THE COURT.

1. DRAINAGE DISTRICTS—*Lands that May be Included.* The drainage act (Laws 1905, ch. 215) authorizes the formation of districts to include lands subject to injury and damage from overflow as well as lands subject to actual overflow.

2. ——— *Same.* The legislature has power to provide for the organization of such districts, which may embrace parts of incorporated cities with other territory for the purposes specified in the act.

3. ——— *Taxation—Lands that May be Assessed.* Lands included within such drainage districts which are not, never have been and can never be subject to overflow may nevertheless be lawfully assessed in proportion to benefits derived to pay for improvements authorized by the act, if they are subject to injury and damage from the overflow of other lands.

4. ——— *Injunction—Collection of Assessment.* The collection of such special assessments, levied after notice and an opportunity to be heard thereon have been given to the landowner, as provided in the act, should not be enjoined where the property so assessed may possibly be benefited by the proposed improvement and there is no claim that the board acted fraudulently or oppressively in determining the facts and making the assessment.

Error from Shawnee district court; ALSTON W. DANA, judge. Opinion filed April 11, 1908. Affirmed.

*Joseph G. Waters, George E. Overmyer,* and *John C. Waters,* for plaintiffs in error.

*J. B. Larimer,* for defendants in error.

The opinion of the court was delivered by

BENSON, J.: The plaintiffs are owners of several tracts of land within the Shunganunga drainage district, organized under the provisions of the drainage law (Laws 1905, ch. 215), and seek to enjoin the collection of special assessments upon their property made by the district board under that law. The plaintiffs allege that the assessments are void because their lands, although situated within the district, "are not, never have been and can never be subject to overflow," and lie from twenty to forty feet above flood overflow or high-water mark. The regularity of the proceedings for the organization of the drainage district is not questioned, and the only objections urged against the assessments are that the lands of the plaintiffs, not being subject to overflow, cannot be lawfully assessed for such improvements, and that the drainage act is invalid.

The act provides that the petition for the organization of a drainage district shall describe the territory to be included, and shall state "that the lands and property therein embraced are subject to injury and damage from the overflow." (Laws 1905, ch. 215, § 3.) On the hearing the county commissioners, before organizing the district, must find that the statements of the petition are true. The drainage board is given power to determine what improvements shall be made to protect the district from overflow or damage resulting therefrom, and is authorized to make improvements that will prevent the overflow of natural watercourses, and thereby protect all the lands within such drainage district from such injury and be conducive to the public health, convenience or welfare. It provides that if, upon the report of the engineer, the board shall determine that a levee shall be constructed or that other work shall be done to protect land in any part of the district from overflow, and that the cost thereof ought

to be paid by levying special assessments on the real estate to be benefited by such improvements, then it shall so declare, and shall appoint assessors "to assess all of the lands within the district which will in their opinion to any extent be protected from overflow or be benefited by the proposed work, . . . and determine the proportion of the estimated cost of such work with which each lot, piece or parcel of land so benefited ought justly to be charged." (Laws 1905, ch. 215, § 21.) The statute requires a notice of the filing of the report of the assessors and of a hearing thereon before the drainage board to be given, when all persons aggrieved may be heard to contest the justness of the same. The report may be amended as may be equitable, and upon confirmation by the board the amounts charged against each tract become special assessments thereon. Suits to set aside or enjoin such assessments are barred in thirty days after such confirmation. Section 2 of the act is as follows:

"That any drainage district may include lands within the county subject to overflow from the same natural watercourse, whether the same be situated partly within and partly without or wholly within or without any incorporated city." (Laws 1905, ch. 215.)

The primary purpose of this section is to authorize the formation of districts to include city property with other territory, and the expression "subject to overflow" is not, when considered in connection with other parts of the act, a restriction of the power to include lands which, although not subject to actual overflow, are nevertheless subject to injury and damage from the overflow of other lands. The property injured by the overflow, as well as that which may be submerged, is to be assessed for the proposed improvement, each tract in proportion to the benefits to be received. The fact, as alleged, that the plaintiffs' lands cannot be actually overflowed, considered alone, affords no ground for relief; and there is no direct averment in the petition

that they will not be benefited by the improvement for which the assessments were made. It is alleged that the act in question attempts to place under contribution for improvements property which cannot be benefited thereby, but this is an attack upon the law itself and not an averment that the improvement in question will not be beneficial in this instance to the property described.

The organization of the district having been, as we must presume, effected after due notice to the plaintiffs and others, it must be held that the plaintiffs' lands were properly included within its limits. (*Reclamation Dist. 531 v. Phillips,* 108 Cal. 306, 39 Pac. 630, 41 Pac. 335; *Comrs. of Highways v. Drainage Comrs.,* 127 Ill. 581, 21 N. E. 206.) The power of the legislature to create districts for the purposes of drainage and to provide for assessments to be made therein by the drainage board to pay for such improvements cannot be successfully questioned. (*Ross v. Supervisors,* 128 Iowa, 427, 104 N. W. 506, 1 L. R. A., n. s., 431 and note.) This may be done through a corporation thus organized, or through county or township boards (Gen. Stat. 1901, ch. 34), or by creating sewer districts as provided in the laws governing cities. When the nature of the case does not conclusively fix it, the power to determine what shall be the taxing district for any particular burden is a legislative power, not restricted except by constitutional limitations. (1 Cooley, Tax., 3d ed., 234.) The benefits of a highway, a levee or a drain may be so peculiar that justice would require the cost to be levied upon a part of a township or county, or upon parts of several subdivisions of the state. (1 Cooley, Tax., 3d ed., 239; *In re Madera Irrigation District,* 92 Cal. 296, 28 Pac. 272, 675, 14 L. R. A. 755, 27 Am. St. Rep. 106; *The State v. Freeman,* 61 Kan. 90, 58 Pac. 959, 47 L. R. A. 67; *Wulf v. Kansas City, ante,* p. 358.)

The law cannot be held invalid upon the claim that it permits the inclusion of land within the drainage dis-

trict which cannot be benefited. That all the lands so
included were subject to injury and damage from over-
flow was alleged in the petition to organize the district,
and was found true upon the hearing, after due notice;
and that these particular tracts would be benefited by
the specific improvement for which assessments were
made, and the proportion of the cost thereof justly
chargeable thereon, were facts found by the assessors
and confirmed by the drainage board.  (Laws 1905,
ch. 215, §§ 18, 23.)   We must presume that such de-
terminaton was made by the board after such notice
and hearing or opportunity to be heard; and upon these
proceedings the court cannot give relief to the tax-
payers affected, unless it can be held as a matter of law
that their property could not by any possibility be bene-
fited by any improvements for which assessments could
be levied, or unless the board acted oppressively and
fraudulently, so that their acts were an abuse, rather
than a use, of the power conferred. (*Coates v. Nugent,*
76 Kan. 556, 92 Pac. 597.)   We cannot hold as a matter
of law that the plaintiffs' lands could not be benefited,
since injuries may occur, from an overflow of lands
within the district, to other lands not subject to over-
flow, and the fact that the plaintiffs' lands might be so
injured has been determined by the local tribunal ap-
pointed for that purpose.   No charge of fraudulent or
oppressive conduct being made, such finding must be
accepted as true.

The constitutionality of the act in question is as-
sailed upon several grounds.  The objection based upon
the fact that only resident taxpayers are allowed to
vote in the district is answered in *The State v. Mona-
han,* 72 Kan. 492, 84 Pac. 130, 115 Am. St. Rep. 224,
where this provision of the law is upheld.   The pro-
visions giving to the drainage board the right to order
the elevation of railway tracks, to change the channels
of watercourses, and to construct levees, drains and the
like in cities, are also criticized as being in violation of
the constitution, but no specific provision of that in-

strument supposed to be violated is pointed out.   Even
if some of these provisions should be found invalid, it
does not follow that the act in its general scope and
operation is void.   It does not appear that the plain-
tiffs will be injured by the exercise of such powers, and
until some party injuriously affected presents the
question we are not called upon carefully to examine all
these provisions and determine their possible effect.

That the district includes a part of the city of Topeka
affords no legal objection.   The area of the state is
divided into counties, townships, and cities.   Any sys-
tem of drainage must include some of these subdivi-
sions, or parts of them.   The efficiency of drainage
would be greatly impaired if the powers of the gov-
erning board were limited to the lines of existing gov-
ernmental subdivisions.   The city is the creature of the
legislative will as well as the drainage district; both
are public corporations, and the legislature may right-
fully prescribe the powers of each, subject only to con-
stitutional restrictions.   (*The State, ex rel., v. Hunter,*
38 Kan. 578, 17 Pac. 177 ; *Wulf v. Kansas City, ante,* p.
358; 1 Cooley, Tax., 3d ed., 238.)   The supreme court of
California, in considering the irrigation law of that
state and in speaking of the legislative power, said:

"It may create municipal organizations or agencies
within the several counties, or it may avail itself of the
county or other municipal organizations for the pur-
poses of such legislation.   .   .   .   This principle is
not contravened by the fact that it may even operate in-
juriously upon some of the individuals or proprietors of
land within the district, or by the fact that there may
be some who for personal motives may wish to resist
the improvement.   Such result is only a sacrifice which
the individual makes to the general good in compensa-
tion for the advantages enjoyed by virtue of the social
compact."   (*In re Madera Irrigation District,* 92 Cal.
296, 308, 315, 28 Pac. 272, 675, 14 L. R. A. 755, 27 Am.
St. Rep. 106.)

We do not mean to decide, however, that lands may
be assessed which are not benefited by the improve-

ment; such benefit has been determined in this case by the tribunal created for that purpose.

"Drainage laws are closely akin to sewer laws. . . . If private property that is benefited by a sewer can be charged for the benefits it receives against the wishes of the owners, so also can the agricultural lands be charged for the benefits conferred upon them. . . . It is competent for the state to raise up a governmental agency for the enforcement of its police powers. . . . The agency thus created is an arm of the state, a political subdivision of the state, and exercises prescribed functions of government." (*Land & Stock Co. v. Miller*, 170 Mo. 240, 252, 253, 70 S. W. 721, 94 Am. St. Rep. 727, 60 L. R. A. 190 and note.)

Similar acts have been generally upheld in other jurisdictions. (*Cribbs v. Benedict*, 64 Ark. 555, 44 S. W. 707; *Badger et al. v. Inlet Drainage District*, 141 Ill. 540, 31 N. E. 170; *Reclamation Dist. 531 v. Phillips*, 108 Cal. 306; *Zigler v. Menges et al.*, 121 Ind. 99, 22 N. E. 782, 16 Am. St. Rep. 357; *Donnelly v. Decker and others*, 58 Wis. 461, 17 N. W. 389, 46 Am. St. Rep. 637; *Taylor v. Crawford*, 72 Ohio St. 560, 74 N. E. 1065, 69 L. R. A. 805; *Comrs. of Highways v. Drainage Comrs.*, 127 Ill. 581; *Fallbrook Irrigation District v. Bradley*, 164 U. S. 112, 17 Sup. Ct. 56, 41 L. Ed. 369; *Wurts v. Hoagland*, 114 U. S. 606, 5 Sup. Ct. 1086, 29 L. Ed. 229.)

The order refusing an injunction is affirmed.