Commissioners of Havana Township Drainage District No. 1

*v.*

J. F. Kelsey.

*Filed at Springfield March 23, 1887.*

1. Appeal—*from drainage assessments—from county court to Supreme Court.* An appeal lies to this court from the judgment of the county court, in a proceeding to confirm a special assessment made by a township drainage district under the act of 1885.

2. Appeal Bond—*whether required—in drainage assessment cases.* A township drainage district, under the act of 1885, is a municipal corporation, within the meaning of section 72, chapter 110, Starr & Curtis' Statutes, giving a right to prosecute appeals and writs of error without giving a bond.

3. Drainage Law—*special assessments—benefits as the proper basis—and herein, of a second or further assessment.* Under the constitutional provision relating to drainage, a special assessment can only be made on property benefited by the proposed improvement. Benefits to be received are essential elements to sustain a special assessment, and without benefits it can not be imposed, and it must not exceed the benefits to be derived by the proposed improvement.

4. The drainage commissioners are not confined to one assessment, but, under the Drainage act, if the first assessment does not prove sufficient to complete the proposed improvement, an additional one may be ordered. In making a second or third assessment, however, the previous assessments should be considered, and in no case should the aggregate amount of all exceed the benefits to the lands assessed. This has no reference to assessments made after the completion of the improvement to keep the same in proper repair.

Appeal from the County Court of Mason county; the Hon. H. C. Burnham, Judge, presiding.

Mr. B. S. Prettyman, and Mr. S. A. Murdock, for the appellant.

Mr. E. A. Wallace, for the appellee.

Mr. Justice Craig delivered the opinion of the Court:

This is an appeal from a judgment of the county court of Mason county, refusing to confirm an assessment made by the Havana Township Drainage District No. 1, under the act of June 27, 1885.

The act under which the proceeding was instituted does not provide for an appeal from the decision of the county court, and it is insisted that an appeal does not lie. The position might be sustained if the right of appeal depended alone upon the provisions of the Drainage act. Such, however, is not the case. Section 241, chapter 37, (Starr & Curtis' Stat.) p. 729, in clear and express terms provides for an appeal from the decision of the county court, in a case of this character. The section provides: "Appeals and writs of error may be taken and prosecuted from the final orders, judgments and decrees of the county court, to the Supreme Court or Appellate Court, in proceedings for the confirmation of special assessments, in proceedings for the sale of lands for taxes and special assessments," etc. Here, the drainage commissioners levied a special assessment on the lands of the district, and filed a special assessment roll with the town clerk, under the provisions of section 26 of the Drainage act. An appeal was taken to the county court, under section 27 of the act. The question presented by the appeal was, whether the assessment should be confirmed, modified, or set aside. Thus, the proceeding in the county court was one for the confirmation of a special assessment, within the meaning of the section of the statute, *supra*, and must be controlled by it.

It is also insisted, that the appeal should be dismissed because no bond was filed. Section 72, chapter 110, (Starr

& Curtis' Stat.) p. 1835, provides, that "the State, counties, cities, villages, towns, school districts, and all other municipal corporations, may appeal or prosecute a writ of error without bond." We shall not stop to elaborate the powers conferred upon a drainage district by the act of 1885, but an examination of these powers, which embraces the important one of raising money by special assessment, are of such a character as to authorize the corporation to be classed or known as a municipal corporation, within the meaning of the statute, which authorizes certain corporations to appeal without bond. The motion to dismiss the appeal will be denied.

We now come to the merits of the case. It appears from an examination of the record, that the Havana Township Drainage District No. 1, was organized October 15, 1883, under what was known as the Drainage act of 1879. On November 7, 1883, the drainage commissioners levied an assessment on all the lands of the district, amounting to the sum of $4190.40, which was supposed to be a sum amply sufficient to make the improvement contemplated at the time the district was organized. In making the assessment, appellee's lands were assessed $468, which was paid. Indeed, almost the entire assessment was collected. At the time the district was organized, the cost of the drains and ditches to be constructed, as estimated, would not exceed $4000; but when the money assessed upon the lands of the district had been collected and expended, it was found that the work was not completed,—that the construction of a half mile of open ditch, running up the railroad, through the Kelsey land, was needed. In order to meet this supposed needed improvement, the commissioners, on the 10th day of October, 1885, made another assessment on the lands in the district, amounting to $2464, $268 of which was assessed upon the lands of appellee. The assessment roll having been filed in the office of the town clerk, appellee, and some twelve or thirteen other land owners, took an appeal to the county court, where, on a

hearing, the court found, from the evidence, that the assessment levied upon appellee's lands exceeded the benefits to the full amount of the sum so assessed thereon,—that the amount of the prior assessment, which was first paid by appellee, was equal to all benefits to said lands, and that the present assessment is wholly in excess of the benefits to said lands by the proposed drainage. The second assessment was, therefore, vacated, and set aside by the court.

There is, as is usual in such cases, some conflict in the evidence in regard to the extent of benefits arising to the lands from the improvement; but from a careful examination of all the evidence introduced on the hearing, we are of opinion that it preponderates in favor of the finding of the court that the first assessment equaled the benefits which lands in the district will receive from the construction of the improvement. Under such circumstances, had the commissioners authority to make the second assessment,—in other words, can the land owner be required to pay more, under the head of a special assessment, than his land may be benefited? If he can, to what extent? May assessment follow assessment, until the entire value of the land may be appropriated to improvements? These are serious questions, which are far-reaching in their character, and their consequences should not be lost sight of in placing a judicial construction upon them.

Section 31, of article 4, of the constitution, under which the Drainage act was passed, is as follows: "The General Assembly may pass laws permitting the owners of land to construct drains, ditches and levees, for agricultural, sanitary or mining purposes, across the lands of others, and provide for the organization of drainage districts, and vest the corporate authorities thereof with power to construct and maintain levees, drains and ditches, and keep in repair all drains, ditches and levees heretofore constructed under the law of this State, by special assessment upon the property benefited thereby."

We think it is plain, that under this provision of the constitution a special assessment can only be made on property benefited by the proposed improvement; that benefits to be received are essential elements to sustain a special assessment; that the absence of benefits excludes the burdens imposed on property by special assessment. This principle,—that assessments shall be based on benefits,—upon examination, will be found to be engrafted in the Drainage act of 1885. Section 26 provides: "The commissioners, by resolution, shall order such amount of money to be raised by special assessment upon the lands of the district, as may be necessary, and such amount shall be apportioned among the several tracts, in the name of the owner, when known, according to acreage of each, and its figure of classification in the graduated scale, so that each tract may bear its burden in proportion to benefits." The section further provides the form of the tax list, and that it shall be filed with the town clerk. This list may be regarded as a levy of the special assessment on the land. Following this section is section 27, which authorizes the land owner to appeal from the assessment thus made, to the county court. But, says the section, "the appeal shall be upon the ground, only, that such tax is a greater amount than the benefits to accrue to the land in question by the proposed drainage." The section further declares: "If the court finds that the tax exceeds the benefits to accrue, the court shall modify the same, so as to make it equal to the benefits."

What was intended by the language we have quoted from section 27? The answer seems manifest: that benefits should always be considered in making an assessment, and that the assessment should not exceed the benefits to be derived from the improvement. Indeed, any other construction of the constitution and the statute would leave the land owner at the mercy of the drainage corporation; and if benefits are to be disregarded, assessment might follow assessment, until they

would exceed the value of the land, and the owner's property might thus be confiscated and taken from him for supposed improvements. We can not give the law a construction which might lead to such dangerous results. We do not think that the drainage commissioners are confined to one assessment, but, under the Drainage act, if the first assessment does not prove sufficient to complete the proposed improvement, an additional one may be ordered. But in making a second or third assessment, the previous assessments should be considered, and in no case should the aggregate amount of all exceed the benefits to the lands assessed. This we regard as a reasonable construction of the law,—one which may enable the improvement to be make, and at the same time afford proper protection to the land owner. What we have said, however, has no bearing on an assessment which may be made, after the improvement has been completed, for repairs, rendered necessary to keep the improvement in proper repair.

Reference has been made, in the argument, to *Morrell* v. *Union Drainage District*, 118 Ill. 140,—a case which arose under the act of 1879. In that case, however, there was no evidence that the assessments exceeded the benefits, as is the case here. That, too, was a bill in equity, and the main ground of the decision rests on the fact that the complainants in the bill had a remedy at law, and hence could not invoke the aid of a court of equity.

In this case, in view of the evidence introduced on the hearing in the county court, we regard the judgment correct, and it will be affirmed.

*Judgment affirmed.*