ANDREW J. LOVELL et al.

v.

THE SNY ISLAND LEVEE DRAINAGE DISTRICT.

*Filed at Springfield October 1, 1895—Rehearing denied January 17, 1896.*

1. DRAINAGE—*what is a sufficient statement of previous expenditures.* The "itemized statement" accompanying the petition of drainage commissioners for an additional assessment, required by section 37 of the Levee act, (Laws of 1885, p. 124,) shows previous expenditures with sufficient particularity to allow the new assessment to proceed, where it gives the number and amount of each warrant paid, although it fails to show to whom and for what such warrants were severally issued.

2. SAME—*evidence against confirmation of assessment—prior proceedings.* On application to the county court for the confirmation of a third special assessment sought to be made by a drainage district, the petition and exhibits under which the prior assessments were made are not admissible in evidence by the objectors.

3. SAME—*effect of changing assessment by the court.* An amendment of a drainage assessment roll by the court, directing that the amounts assessed against the several tracts involved in the appeal be "released," is in effect a finding that the damages to each tract equal the benefits thereto.

4. SAME—*damages and benefits.* Where the column in an assessment roll for damages contains no entry of damages, it will be presumed that the column headed "benefits" shows benefits in excess of damages.

5. SAME—*prior assessment roll is competent evidence.* On application to the county court for the confirmation of a third special assessment it is not error to admit in evidence the special assessment rolls of the prior assessments, since the aggregate amount of all assessments cannot exceed the benefits to the land assessed.

6. SAME—*benefits to health may be shown.* On application to confirm a special assessment made in a drainage district, it is not error to show that the lands assessed were made healthier by the construction of a levee.

7. SAME—*of the damages allowed.* On application by a drainage district for the confirmation of a special assessment, there being two prior assessments, for the building and completion of a levee, the allowance of damages is confined to such as will result from the completion of the proposed work under the last assessment.

8. SAME—*the assessment roll makes a prima facie case.* On application by drainage commissioners to confirm a special assessment, the

roll of the assessment makes out a *prima facie* case, and the district is not required to resort to any other or further evidence, except such as may be necessary to meet that of the objectors to impeach the assessment.

9. EVIDENCE—*prima facie defined.* *Prima facie* evidence of a fact is such evidence as in judgment of law is sufficient to establish the fact, and if not rebutted it remains sufficient for that purpose.

· 10. RES JUDICATA—*in respect of special assessment.* The entry of judgment of confirmation of two special assessments against lands is the judicial determination of the validity of the assessment, and upon application to confirm a third assessment in the same drainage district such determination is conclusive.

11. WITNESSES—*competency to give opinions—damage.* Witnesses who profess to be familiar with the subject of inquiry, and who have had opportunities of acquiring information on such subject, are competent to give opinions as to how much land will be benefited or damaged by a proposed improvement, even though they do not live in the immediate neighborhood of such land.

12. COSTS—*apportionment of, in special assessment.* In a proceeding to confirm a special assessment under the Drainage law, the apportionment of the costs is a matter in the discretion of the county court, and this court will not interfere with the exercise of such discretion unless there has been a palpable abuse of it.

13. SAME—*clerk may make the apportionment.* The court may fix in its order the data for the apportionment of costs, leaving to the clerk the mere clerical duty of making the necessary computation.

APPEAL from the County Court of Pike county ; the Hon. EDWARD DOOCEY, Judge, presiding.

A. G. CRAWFORD, for appellants:

After petition is filed and confirmed a jury is required to assess damages and benefits.    Rev. Stat. chap. 42, sec. 27, and secs. 41-43.

Of a second or third assessment; when authorized: Rev. Stat. chap. 42, sec. 63.

The true basis of assessing benefits and damages to lands is, how much will the value of lands be increased or enhanced, or how much will the value be decreased or depreciated.    *Peoria* v. *Kidder*, 26 Ill. 358; *Railroad Co.* v. *Francis*, 70 id. 238; *Page* v. *Railway Co.* id. 324·; *Eberhart* v. *Railway Co.* id. 347; *Railway Co.* v. *Walsh*, 106 id. 253; *Spear*

v. *Drainage Comrs.* 113 id. 632; *Drainage District* v. *Kelsey,* 120 id. 482.

Benefits to be received are essential elements to sustain a special assessment. Without benefits an assessment cannot be imposed, and it must not exceed the benefits to be derived. Rev. Stat. chap. 42, sec. 44; *Drainage District* v. *Kelsey,* 120 Ill. 482; *Briggs* v. *Drainage District,* 140 id. 53; *Badger* v. *Drainage District,* 141 id. 540; *Gauen* v. *Drainage District,* 131 id. 446; *Morrell* v. *Drainage District,* 118 id. 139.

Persons residing in the neighborhood of lands proposed to be improved by drainage are competent witnesses to give opinions as to how much land will be benefited or damaged by such proposed drainage, without showing special knowledge or training on the subject. But this does not apply to those who do not reside there. *Spear* v. *Drainage Comrs.* 113 Ill. 632; *Green* v. *Chicago,* 97 id. 370.

In making a second or third assessment the previous assessment should be considered, and in no case should the aggregate amount of all assessments exceed the benefits to lands assessed, nor their proportionate share of benefits and costs. Rev. Stat. chap. 42, sec. 44; *Drainage District* v. *Kelsey,* 120 Ill. 482; *Briggs* v. *Drainage District,* 140 id. 53; *Badger* v. *Drainage District,* 141 id. 540.

No tract of land shall be assessed more than its proportionate share of the estimated cost of the work and expenses of the proceedings, when compared with the other lands in the district. Rev. Stat. chap. 42, sec. 44; *Briggs* v. *Drainage District,* 140 Ill. 53; *Badger* v. *Drainage District,* 141 id. 540.

A special assessment of this kind is not *in personam,* but *in rem.* *Railroad Co.* v. *Drainage District,* 129 Ill. 417; *Craw* v. *Tolono,* 96 id. 255; *Virginia* v. *Hall,* id. 278; *County of McLean* v. *Bloomington,* 106 id. 209.

A point which has been actually and directly in issue in a former suit or proceeding, and was there judicially

passed upon and determined by a court of competent jurisdiction, cannot be drawn in question in any further action between the same parties or their privies; and a judgment rendered by a court of competent jurisdiction on the merits of the case is a bar to any future suit upon the same cause of action, so long as it remains unreversed. 2 Black on Judgments, secs. 504-506, 673; *Maloney* v. *Dewey*, 127 Ill. 399; *Jenkins* v. *Bank*, 111 id. 462; *Union Nat. Bank* v. *Bank*, 123 id. 520; *Cain* v. *Campbell*, 116 id. 305; *Stock Yards* v. *Ferry Co.* 112 id. 384; *Attorney General* v. *Railroad Co.* id. 520; *Neff* v. *Smyth*, 111 id. 100; *Horton* v. *Critchfield*, 18 id. 133.

A successful defense to one of a series of actions founded on the same subject matter, if it went to the merits of the whole, is a complete estoppel to any subsequent action of a series. 2 Black on Judgments, 751; *Bissel* v. *Spring Valley*, 124 U. S. 225.

In case of appeal, when the judgment shall be affirmed in part, the court may divide the costs between the parties according to the justice of the case. Rev. Stat. chap. 33, sec. 20.

MATTHEWS, HIGBEE & GRIGSBY, for appellee:

The apportionment of the costs in appeal cases is a matter for the exercise of the discretion of the court, and such exercise of discretion cannot be assigned for error unless it has been abused. *Spear* v. *Drainage Comrs.* 113 Ill. 632; *Lee* v. *Quirk*, 20 id. 392.

As to the competency of non-professional witnesses to testify as to damages or benefits to lands sought to be reclaimed or improved, see *Spear* v. *Drainage Comrs.* 113 Ill. 632; *Green* v. *Chicago*, 97 id. 370; *Railway Co.* v. *Henry*, 79 id. 290.

The trial of an appeal from the confirmation is *de novo*, and the introduction of the assessment roll makes out a *prima facie* case. *Briggs* v. *Drainage District*, 140 Ill. 53.

The jury appointed to assess damages and benefits, or benefits alone, have nothing to do with the question

whether particular tracts of land included in the district will or will not be benefited by the proposed system. They shall find the "proportionate share" that each piece of land must pay.   *Gauen* v. *Drainage District*, 131 Ill. 446.

When the column in an assessment roll for damages contains no entry of damages, it will be presumed that the column headed "benefits" shows only benefits in excess of damages, even if damages were shown.   In a proceeding to repair a levee no damages are to be assessed. Act of 1879, secs. 17, 18; Starr & Curtis, 924, 925; *Huston* v. *Clark*, 112 Ill. 345.

The itemized statement required by the statute was filed with the petition, and its sufficiency was passed upon by the county court before the jury were impaneled, and cannot be assigned for error in this proceeding.   The statement is addressed to the court on the petition of the commissioners, and never goes to the jury in a proceeding to assess benefits.   3 Starr & Curtis, p. 422, sec. 63.

The doctrine of *res judicata,* as stated in appellants' brief, is not challenged, but its application is denied. The court admitted in evidence the assessment rolls of 1880, 1888 and 1892, to show the aggregate of the several assessments made against each tract of land, and to us that seems sufficient without the antecedent orders of the court leading up to them.

Mr. Justice Baker delivered the opinion of the court:

The original Sny Island levee was constructed in the years 1873, 1874 and 1875, under the Drainage act of 1871. The decisions of this court in *Updike* v. *Wright,* 81 Ill. 49, and other cases, resulted in an amendment to the constitution, which authorized the organization of drainage districts, with power to construct and maintain levees, drains and ditches, and to keep in repair all drains, ditches and levees theretofore constructed under the laws of the State, by special assessments upon the property benefited thereby.   (1 Starr & Curtis' Ann. Stat. p. 122, sec. 31.)

And the legislature passed an act, which was approved and went in force May 29, 1879, to provide for the construction, reparation and protection of drains, ditches and levees across the lands of others, for agricultural, sanitary and mining purposes, and to provide for the organization of drainage districts. (Laws of 1879, p. 120; 1 Starr & Curtis' Stat. p. 919.) Under the provisions of this act the Sny Island Levee Drainage District, the appellee herein, was organized in 1880. The Sny Island levee is more than fifty-two miles long, and is intended to reclaim a body of land lying between the east bank of the Mississippi river and the bluffs in the counties of Adams, Pike and Calhoun. The drainage district is from five to eight miles wide, and contains about 110,000 acres of land. In 1880 an assessment of $100,000 was levied on the lands for the purpose of repairing and maintaining the old levee. In the spring of 1888 the levee broke in twenty-four different places and inundated the lands in the district, and in the latter part of that year an additional assessment of $100,000 was made.

The litigation now before us arises out of a petition of the commissioners of the drainage district that was filed in the county court of Pike county on the 30th day of July, 1892, asking for an additional assessment of $150,000 to complete the work of raising and strengthening the levee, and making it protective against waters equal to the high waters of 1851, the waters of that year being the highest ever known in the upper Mississippi river. At the August term, 1892, of the court, objections were filed by some of the property owners, but these were overruled, and the court made an order that the prayer of the petition be granted, and that the assessment prayed for be made by a jury of twelve men, who should make a special assessment against the several tracts of land in the district sufficient to produce the sum of $150,000. Thereafter a jury was impaneled and sworn, as required by law.

Andrew J. Lovell and the other land owners, who are appellants herein, duly filed objections to the assessment roll that was made by the jury, and they afterwards appealed to the county court from said assessment roll as corrected and confirmed by said jury. Those parts of the assessment roll not appealed from were confirmed by the court and spread upon the records. In the county court the several appeals of the land owners were consolidated under the title of "Sny Island Levee Drainage District *vs.* Andrew J. Lovell *et al.*" Thereafter the matter of the objections involved in the consolidated case was tried before the court and a jury. The assessment made upon the lands of the objectors by the first jury amounted in the aggregate to $3145.02, but the jury before which the objections were tried, on the appeal, in the county court, reduced said aggregate assessment to $1746.95. Andrew J. Lovell and others entered a motion for a new trial, which was overruled by the court, and they took an exception. The court thereupon ordered the assessment roll to be changed and amended so as to conform to the verdict of the jury, and entered a judgment approving and confirming the same as so amended; and it further ordered that the costs of the proceeding should be apportioned as follows: That the Sny Island Levee Drainage District should pay one-fourth of all the costs taxed in the appeal cases, and that the objectors (appellants in the appeals) should pay three-fourths of all costs incurred in said appeal cases, to be apportioned among them by the clerk in the manner directed in the order made by the court. This appeal from the judgment of confirmation was then taken by said objectors.

It is urged by appellants that it was error for the county court not to sustain the objections filed by them at the August term, 1892, to the petition of the commissioners, but, on the contrary thereof, to order an assessment made as prayed for. This contention is based on the claim that the report filed as an exhibit with said

petition nowhere shows an itemized account of the manner in which the moneys received by the district had been expended.

By section 37 of the Drainage act approved and in force May 29, 1879, and known as the "Levee act," as amended in 1885, (Laws of 1885, p. 108; 3 Starr & Curtis' Stat. p. 422, par. 63, sec. 37,) it is provided that "assessments, from time to time, may be levied on the land within any district where it shall appear to the court that the previous assessment or assessments have been expended or are inadequate to complete such work, or are necessary for maintenance and repair, or when it shall become necessary for the construction of any additional work, or the completion of any work already commenced within any drainage district to insure the protection or drainage of the lands in said district, under the order and directions of the court, * * * on the petition of the commissioners, accompanied by an itemized statement of accounts made by the commissioners, under oath, showing the moneys received by the district and the manner in which they have been expended, together with plats, profiles of such additional work, and estimated cost of the same."

It is to be borne in mind that the "itemized statement" required by the statute was of moneys theretofore received by the district that the commissioners could only "use * * * under the direction and approval of the court," and that such statement was addressed to the court, and was intended for its information in a matter that the statute submitted to its supervision, and in and about the preliminary matter of ordering an additional assessment, and was and is not intended for the purpose of affording information or knowledge to the jury. The statement of expenditures here made by the commissioners under oath gave the consecutive numbers of the several warrants paid and the amounts of each of said warrants, but did not state the names of the persons to

whom the respective warrants were issued or paid, nor
the consideration or claim for which they were severally
issued.   An item is a separate particular of an account,
and to itemize is to state in items or by particulars.
Here the numbers of the respective warrants, and the
amounts included in each of such warrants, were sepa-
rate particulars of the expenditures.   It is manifest that
all the particulars that would tend to limit or make spe-
cific were not given.   But the court held that the report
filed as an exhibit was an itemized statement of accounts,
and that the manner in which the moneys received by
the district had been expended was sufficiently shown to
fully advise it in the premises, and we are not prepared
to say that it committed substantial error in so holding.

The court refused to admit in evidence the petition
and exhibits on which the special assessment of 1880 was
based, also the petition on which the special assessment
of 1888 was based, and also the orders of the county court
of Pike county made at the April term, 1889, in the matter
of the appeals of the present objectors and appellants
from the assessments made on the lands here involved in
said special assessment of 1888, the said orders showing
that upon the hearing in the county court of said appeals
before the judge, without a jury, the assessment was
changed from that made before the appeal, and the as-
sessment roll amended, and the lands mentioned in said
orders released from payment of any amount whatever.

The act provides (sec. 37) that in cases of additional
assessments there shall be like proceedings, as near as
may be, as in cases of original assessments of damages
and benefits under the act, and that such additional as-
sessment or assessments, when made, shall have the same
force and effect, and be collected in the same manner, as
original assessments.   In the case of an original assess-
ment the jury is sworn to make an assessment of both
damages and benefits.   (Sec. 16.)   Section 17 provides
that in making the assessment, in case damages are al-

lowed to and benefits assessed against the same tract of land, the balance, if any, shall be carried forward to a separate column for damages or benefits, as the case may be. Section 18 provides that in no case shall any tract of land be assessed for benefits in a greater amount than its proportionate share of the estimated cost of the work and expenses of the proceeding. In the event of an appeal taken to the county court under the provisions of the act, it is provided in section 24 that in case the assessment of damages or benefits shall be changed from that made by the jury or commissioners, the court shall cause the assessment roll to be amended to conform thereto. And section 39 provides that all damages, over and above benefits, to any tract of land shall be payable out of the amount assessed against other lands assessed for benefits.

We are unable to see what possible bearing the petition and exhibits connected with the assessment of 1880 could have had on the questions that the jury in the county court were impaneled to try. It is suggested that the petition for the organization of the drainage district and these other papers should have been before the jury, in order that they might comprehend the full scope of the proceeding. It seems to us that all this would merely have tended to confuse the minds of the jurors. The court had already judicially determined that a special assessment should be made upon the lands in the district sufficient to produce the sum of $150,000. The only duty that the jury had to perform was to ascertain whether or not the additional assessment of 1892, already made, was, in respect to any of the lands of any of the appellants, more than such lands were and would be benefited by the expenditure and work, or more than the proportionate shares of said several tracts of land in the estimated cost of the proposed work and expenses.

It seems to be supposed that the order or orders made by the county court in April, 1889, changing and amend-

ing the assessment roll of 1888, should have been admitted in evidence and held to be a bar to any additional assessment on the lands of appellants. Reading said order or orders of the county court in the light of sections 37, 16, 17, 18, 24 and 39 of the Levee Drainage act, and which sections we have already referred to, it seems to us that the scope and effect of such order or orders were wholly different from what seems to be supposed. In order to produce the $100,000 authorized in 1880 an assessment was made, and it included an assessment of differing amounts on the different tracts of land in the district owned by the several then appellants. The fact that these tracts of land would be benefited in some amount had been passed upon and determined, so far as the appeals were concerned, in the organization of the district and in the order for the additional assessment of $100,000. (See *Gauen* v. *Drainage District,* 131 Ill. 446.) The appeals taken to the county court were consolidated, and a jury being waived, the consolidated appeal case was submitted to the court for decision. The court changed and amended the assessment roll, and directed that the several amounts that had theretofore been assessed against the several tracts of land involved in the appeal should be "released." This was tantamount to finding that the damages as to each tract of land equaled the proportional benefits thereto to be derived from the expenditure of the $100,000. If the court had found that the damages exceeded the benefits to be so derived, then it would have "carried forward the balance to a separate column for damages," as provided in section 17, such damages to be paid out of the amounts assessed against the other lands, as provided in section 39, and each tract of land could in no case be assessed for benefits in a greater amount than its proportionate share of the $100,000 and expenses, (sec. 18,) and from the benefits so assessed against each tract were to be deducted the damages allowed to such tract. (Sec. 17.) The court, in adjusting the assessment

of \$100,000 then before it, so as to make the same just
and equitable, determined that the damages were a fair
set-off as against the benefits, and in compliance with
the statute (sec. 24) it caused the assessment roll to be
amended to conform to its findings, and struck out the
amounts appearing therein as benefits, and left the sev-
eral tracts of land standing without any balances carried
forward for either benefits or damages.   Where the col-
umn in an assessment roll for damages contains no entry
of damages, it will be presumed that the column headed
"benefits" shows benefits in excess of damages.   (*Huston*
v. *Clark*, 112 Ill. 344.)   And the use, in section 17 of the
statute, of the expression "if any," clearly indicates that
it is contemplated by the statute that there are or may
be cases of an equality of benefit and damage.

From the fact that the damages to the lands of appel-
lants by reason of back-water, filling up of water-courses,
etc., would equal their proportional part of the benefits
that would accrue from the expenditure of \$100,000 in
excluding the waters of the Mississippi river, it does not
follow that the expenditure of an additional \$150,000 to
put the levee above the high water mark of 1851, and
strengthen it, would be of no benefit to such lands over
and above damages.

We think there was no error in refusing to admit the
proffered evidence.   And that which we have said shows
that it was not error to refuse to give to the jury the first
and second of the instructions asked by appellants, which
are based upon the doctrine of *res judicata,*—a doctrine
that has no proper application to the matter of this addi-
tional assessment of \$150,000.

Nor was it error, as seems to be supposed, for the court
to allow the special assessment rolls of 1880 and 1888 to
be introduced in evidence.   In making a second or third
assessment the previous assessments should be consid-
ered, and in no case should the aggregate amount of all

exceed the benefits to the lands assessed. *Havana Drainage District* v. *Kelsey*, 120 Ill. 482.

In our opinion it was not error to admit evidence to show that the lands were made healthier by the building of the levee, and that the fact they were rendered healthier has been a benefit to them. A jury may well be left to draw the conclusion for themselves, from their observation and knowledge of matters and things, that a farm or tract of land in a healthy region of country is more valuable than one in an unhealthy locality, all other things being equal. The constitutional amendment which authorizes the construction of drains, ditches and levees by special assessment, recognizes the fact, which we all know, that land will be benefited by an improvement in its sanitary condition by means of such drains, ditches and levees, and the same fact is also recognized in the title of the act under which this district is organized; and drainage districts may even be formed under the act for sanitary purposes only, and the levees, drains or ditches paid for by special assessments.

It is objected that the witness F. L. Zerenberg was permitted to answer that there was nothing connected with the elevation or strengthening of the Sny levee from this time on that would cause any greater damage to Bay creek or Six Mile creek, or the lands adjoining them, than had already been occasioned. And in that connection our attention is called to instructions given for appellee, wherein the jury were told, in substance, that in assessing benefits to be conferred by the present assessment they should not consider as a set-off to benefits to be conferred by the proposed improvement to be paid for by the $150,000 assessment, any damages that had been suffered or sustained by any tract of land in consequence of the original building of the levee, or in consequence of the work done under the special assessments of 1880 and 1888-89, nor any damage or damages except such as will be the result of the completion of the

proposed work under the present assessment. And attention is also called, in the same connection, to modifications made by the court, along the same line, to certain instructions asked by appellants.

It is to be noted, when the district was organized and the assessment of 1880 made, the amounts then levied "for benefits" against these tracts of land were merely the balances of benefits over damages arising out of the assessment then made of $100,000. It must be presumed that the damages, if any, that would be occasioned by the work to be done with that assessment were then allowed to the lands and deductions made therefor from the "benefits assessed" in the first instance, (sec. 17,) and, as we have already seen, in the asesssment of 1888-89 the damages to grow out of the additional assessment of $100,000 then made and the work to be done therewith were allowed to said lands, and that the final determination, on the appeal, was that the damages and the benefits were a just and equitable set-off as against each other, and that therefore no amounts were carried forward to an appropriate column, either "for damages" or "for benefits." (Sec. 17.) It is therefore manifest that these lands have already been allowed for all damages caused by the assessments prior to that of 1892 and the work done under such assessments, and also manifest that if appellants were now permitted to go back, and again, in the present proceeding, recover damages so occasioned, or, what is tantamount thereto, here have the advantage of such damages as against benefits in this matter of an additional assessment of $150,000, the result would be that double damages would be allowed against the drainage district.

We think that the court properly confined the allowance of damage or damages to such as would be the result of the completion of the proposed work under the present assessment, and that there was no error in its rulings in that regard. In our opinion, the case of *Briggs* v. *Union*

*Drainage District*, 140 Ill. 53, is not in point. And see, in connection with that case, *Gauen* v. *Drainage District, supra.*

The evidence in this record is quite voluminous, covering over twelve hundred and fifty type-written pages of the record. Appellants, in their brief and argument, call attention to and comment upon about one hundred other objections made by them to testimony introduced by appellee, said objections going to particular questions asked. We have already mentioned and commented on the objections that we deem the more important. The other objections could not all be specially mentioned and passed upon within the reasonable limits of an opinion. We have, however, considered, with more or less care, all of them. Some of these remaining objections we do not consider tenable. Others of them are extremely technical and without substantial merit. Still others seem to be trivial and captious. And there are some that might properly have been sustained by the trial court, but we think that none of these latter are of such consequence as that they would justify a reversal of the judgment and order of the county court.

The appellants claim that it was error for the court to instruct the jury that the assessment roll was *prima facie* evidence to sustain the assessments upon all the tracts of land in controversy, and that, said assessment roll being in evidence, the burden of proof was shifted upon the objectors to establish, by a preponderance of the evidence, either that said tracts of land would not be benefited to the amounts assessed against them, respectively, or that said tracts were assessed for benefits in greater amounts than their proportionate shares of the $150,000 and expenses; and they make a like claim of error because the court refused to instruct the jury that while the assessment roll was *prima facie* evidence of the correctness of the assessment, yet that meant simply that if no evidence whatever was offered on the part of the objectors then the presumption would be that such assess-

ment roll was correct, but that if evidence was offered by the parties upon the issues in regard to its correctness, then the jury should not be influenced by such assessment roll, but should base their verdict upon the evidence so introduced.     The assignments of error in question are not well grounded.   The assessment roll makes out a *prima facie* case, and the commissioners are not required to resort to other evidence, except such as may be necessary to meet the evidence introduced by the objectors to impeach the assessment.   (*Briggs* v. *Union Drainage District, supra.*)   A *prima facie* case must prevail unless it be rebutted or the contrary proved.   (1 Starkie on Evidence, 544.)   *Prima facie* evidence of a fact is such evidence as in judgment of law is sufficient to establish the fact, and if not rebutted it remains sufficient for the purpose.   *Kelly* v. *Jackson,* 6 Pet. 622.

Complaint is made of the thirteenth instruction given at the instance of appellee.   Said instruction was as follows:                                       .

"The court instructs the jury, that for the purpose of determining whether the lands in question are assessed their proportionate share of the present assessment, they shall not take into consideration the amount of the special assessments of 1880 and 1888 against said lands, but, to determine whether such assessments are proportionate or not, they shall consider the present assessment only, without regard to prior assessments."

The questions whether or not the special assessments of 1880 and 1888-89, respectively, made on the lands of appellants, were in each instance the proportionate shares of said lands in the two assessments of $100,000 each, were, as relating to each, necessarily involved and determined in the respective proceedings in which said assessments were severally made.   The last in date of said two assessments resulted, on appeal, in the correction, in 1889, of said assessment in the county court.   The assessments of both 1880 and 1888 were returned into the

county court and stood for hearing therein. (Sec. 22.) When the assessment roll of 1888-89 was changed and corrected by the county court and there was judgment of confirmation, the assessment was spread upon the records of the court, and appeals or writs of error were allowable therefrom as in cases of appeals from and writs of error to the county court in cases of final judgments of such courts in proceedings for the sale of lands for taxes or special assessments. (Sec. 25.) Said assessment of 1888 also became matter of record and of judgment in said county court in respect to the lands in regard to which no appeals were taken to that court, and the assessment likewise became matter of record and of judgment in said court in respect to the lands here in question and in respect to all the lands in the district, for section 22 of the act provides that if no objection shall be made to the assessment it shall be certified by the foreman of the jury and delivered to the commissioners, who shall return the same to the court in which the petition was filed, and that the same shall stand for hearing therein. And it is provided in section 25 that the granting of an appeal in one or more cases or to one or more persons shall not operate to defer the confirmation of said assessment roll in other cases, but that the court may proceed to confirm said assessment roll as to all lands where no appeal is taken, and that in all appeals taken from the confirmation made by the county court, if the judgment of the county court shall be affirmed, or if, upon such cause being remanded for a new trial, the judgment of said court shall be in favor of said district, the court shall order the judgment so rendered to be made a part of said confirmed roll, and the assessment of benefits or damages so found shall be extended on said roll and the same shall become a part thereof. And section 26 of the act provides that said assessments shall be a lien upon the lands assessed, as other taxes are, and that such lien shall continue until said assessments are paid, and that the proceedings of

the county court of the county in which said lands are situated shall be sufficient notice of such lien.

The entry of the judgments of confirmation of 1880, 1888 and 1889 were judicial determinations, by a court of competent jurisdiction, that the assessments of 1880, and of 1888, as corrected by the judgment of 1889, on the lands of appellants were the proportionate shares of such lands in the original assessment of $100,000 and the subsequent additional assessment of $100,000. The owners of said lands are foreclosed from now raising and litigating these questions which are settled by the solemn judgments of confirmation rendered in and made matters of record by the county court. The matter of the proportionate shares of the lands of appellants in these assessments of 1880 and 1888-89, as between the drainage district and said lands and the owners of said lands, is *res judicata.* We think that the complaint made against this instruction 13 is without merit.

A multitude of objections are urged against the very numerous other instructions that were asked by appellee and given by the court. It must be conceded that some of these instructions are argumentative; that some of them are inaccurate and do not correctly state the law; that many of them are intricate and involved and full of repetitions, and that many of them are otherwise open to criticism. But it cannot justly be claimed that the case of the appellants was not fully given to the jury in the instructions asked in their behalf, and in language as favorable to them as they could fairly seek to have them couched in, and in many instances in language more favorable than could justly be demanded. In fact, it seems to have been a race between the parties as to which could obtain from the court the most, and the longest and the strongest, and the most intricate and argumentative, instructions. Neither party seems to be in a position that would justify it in now throwing stones at the other. It would be an exceedingly tedious, and almost endless,

task, to enter into a detailed examination of the instructions that were given. The instructions, as a whole, did not unfairly give the case to the jury. Upon the whole, we are not inclined to say that the inaccuracies and other faults in the instructions were such as to require a reversal of the judgment of confirmation and a third submission of the question of benefits and damages to a jury,—and especially so, as it is not probable that a more satisfactory or equitable conclusion would then be reached.

Nor does the evidence require a reversal of the order and judgment below. The testimony introduced by the respective parties was very conflicting. The introduction in evidence of the assessment roll made a *prima facie* case for appellee. The opinions of witnesses who profess to be familiar with the subject of inquiry, and who have had opportunities of acquiring information on such subject, are competent to give opinions as to how much land will be benefited or damaged by a proposed work or improvement,—and this, even though they do not live in the immediate neighborhood of such land. (*Green* v. *City of Chicago*, 97 Ill. 370; *Keithsburg and Eastern Railroad Co.* v. *Henry*, 79 id. 290; *Spear* v. *Drainage Comrs.* 113 id. 632.) It was one of the circumstances of the last cited case that the farmers there introduced as witnesses lived in the immediate neighborhood of the lands, but it was not there held that living in such immediate neighborhood was essential to competency to testify as to such opinions. There was ample testimony before the jury, if the witnesses were believed by them and weight given to their testimony, to sustain the verdict. In fact, the verdict rendered can hardly be regarded as a verdict sustaining appellee in its claims, since it reduced the assessment of the jury that made the assessment in the first instance to the extent of $1398.07, and allowed an aggregate balance of benefits against the lands of appellants amounting to only $1746.95.

It is assigned as error that the county court ordered appellants to pay three-fourths of the costs on the appeal, and that the clerk apportion the same among the appellants. The apportionment of the costs was a matter resting in the discretion of the county court, and this court will not interfere with the exercise of such discretion unless there has been a plain and palpable abuse of it. (*Lee* v. *Quirk*, 20 Ill. 392; *Spear* v. *Drainage Comrs. supra.*) We cannot hold that there was here such an abuse of the discretion of the court in apportioning costs as to warrant a reversal. The court, in its judgment and order, fixed the data for the apportionment of the three-fourths of the costs among appellants, and it was not error to delegate to the clerk of the court the mere clerical duty of making the necessary computations and apportioning the costs among them upon the basis and in the manner fixed by the order of the court.

For the reasons herein stated, the judgment of confirmation rendered by the county court is affirmed.

*Judgment affirmed.*