## ROOD v. CLAYPOOL DRAINAGE & LEVEE DIST.

(Circuit Court of Appeals, Seventh Circuit. January 6, 1903.)

### No. 928.

1. CONTRACTS WITH DRAINAGE DISTRICT—CONSTRUCTION OF DITCH—IMPLIED OBLIGATION OF DISTRICT TO FURNISH RIGHT OF WAY.

In a contract between a drainage district and one who agrees to construct certain ditches for the district, it is an implied condition that the district will provide the necessary right of way, without which the contractor could not perform the contract on his part.

2. SAME—LIABILITY FOR BREACH.

A drainage and levee district created under the Illinois statute, which expressly provides that such district shall be a body corporate, with power to contract and be contracted with, and to sue and be sued, although a corporation in invitum, is liable in damages for breach of a contract, lawfully made by its commissioners under the powers conferred by the statute for the construction of ditches, where it failed to provide right of way therefor, so that the contractor could complete the same within the time specified, and by reason of the delay he was damaged.

In Error to the Circuit Court of the United States for the Northern District of Illinois.

The plaintiff below (plaintiff in error here), a citizen and resident of the State of Iowa, was a contractor on a ditch in the County of Grundy, State of Illinois, to be constructed by the defendant below (defendant in error here), a corporation organized under the law of Illinois—known as the "Levee Act." The suit was for damages caused to plaintiff by defendant in failing to give plaintiff right of way within the time provided in the contract.

A jury having been waived the cause was tried to the Court, and upon the conclusion of plaintiff's evidence, on motion of defendant, a judgment was entered for the defendant.

The Circuit Court found in substance the following facts: That on the second day of August, 1897, the plaintiff entered into a contract with defendant, whereby plaintiff agreed to do all the ditch work designated in certain plans, specifications and orders of the County Court of Grundy County, in accordance with such plans, specifications and orders, and to receive therefor compensation at the rate of seven and nine-tenths cents per cubic yard, the work to be completed January 1st, 1898; that plaintiff has fully performed his contract, and defendant has paid for the number·

of yards excavated according to the price stipulated in the contract; that the work was not completed January 1st, 1898, but was not completed until June 14th, 1898; that the evidence tended to show that the plaintiff would have completed his contract within the time fixed, had he not been delayed by the defendant's failure to furnish the necessary right of way; and that the evidence tended to show that by reason of such delay, the plaintiff sustained damages to the amount of more than $2,200 exclusive of interest and costs, which damages were the natural and probable consequence of such delay.

The Court further found that the evidence tended to show that the delay was caused by the following circumstances: The Elgin, Joliet & Eastern Railway, successor to the Gardner Coal City & Northern Railway, by purchase, crossed the line of the proposed ditch. The latter road had been made a party to the proceedings in the County Court, but, until the 9th of November, 1897, the former had not. On the last named date, the Elgin, Joliet & Eastern brought its suit for injunction, in the Circuit Court of Grundy County, against both plaintiff and defendant, in which suit an injunction was issued, restraining them from excavating or interfering with the right of way of the railroad. November 20th, 1897, the plaintiff had completed the ditch ·to a point as near the right of way of the railroad as he could go with his ditching machine, without violating the injunction, and thereupon served defendant with notice that he had been stopped, and was being greatly damaged. Prior to this time the defendant had done nothing toward requiring the railroad company to enlarge the opening in the grade of its road; but after such notice the defendant served the railroad company with notice to enlarge the opening across its right of way, and this resulted in a stipulation, filed twenty days later, in the proceedings in the County Court, wherein it was agreed that the railroad should, at its own expense, as soon as practicable, make an opening through its grade at the point where the ditch crossed its track, thus permitting the plaintiff to cross the right of way with his dredge. Thereupon an order was entered dissolving the injunction, but reserving to the defendant and the railroad company the privilege to determine all questions of benefits, damages, and requirements, as if the parties respectively had appeared in the County Court at the original hearing. But not for some time after this were the differences between the defendant and the railroad adjusted, and it was already the thirtieth of December, 1897—by which time the ground was frozen to the depth of about two feet—when the plaintiff was permitted to go through with his dredge.

On this statement of facts the Circuit Court came to the following conclusions of law: First: That the court has jurisdiction of the subject matter involved in the suit, and of the parties thereto. Second: That it was not the duty of the defendant to furnish the plaintiff the right of way necessary to allow the plaintiff to perform his contract. Third: The defendant, being organized under the general statutes above referred to, is not simply a quasi corporation, but a limited corporation with limited life and limited powers. It is simply a method prescribed for drainage, which is a part of the general system of the state. It has no general fund, and no power of taxation, except for one specific purpose. Under the statute there is no recourse against the defendant for damages, whether growing out of contract or tort; there is no way whereby a judgment therefor can be enforced. Fourth: Assuming, as proved, all that the evidence tended to prove, the defendant is entitled to judgment.

And thereupon the judgment for defendant was accordingly entered.

Geo. Burry, for plaintiff in error.

B. F. Lincoln, for defendants in error.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

GROSSCUP, Circuit Judge, after the foregoing statement of facts delivered the opinion of the Court.

If the liability of the drainage district, on its contract, were such

as would be enforced in case it were a private corporation or individual, there would be no room to hold that the defendant was under no duty to furnish the plaintiff the right of way necessary to the plaintiff's performance of his contract. Right of way was a prerequisite to plaintiff's performance of his part of the contract, and being in the power of the defendant and not of the contractor, must be furnished by the defendant. It was an implied contract obligation of the defendant. U. S. v. Babbitt, 66 U. S. 55, 17 L. Ed. 94. Indeed, no serious argument against this proposition is submitted.

The turning point in this case, then, is this: Is the district liable, at the instance of the plaintiff, for the character of damages declared? Unquestionably, were it a private corporation or individual or a voluntary municipal corporation, it would be liable. But, the insistence is, that the drainage district is a public involuntary quasi corporation, organized for one purpose only, and having no lawful power to make assessments except for benefits; that damages of the character asked by plaintiff is not in the nature of benefits within the meaning of the statute; that the commissioners of the district had no power, by contract or otherwise, to bind the district to such damages; or to any contract relation that would give the plaintiff such right of damages; and that the plaintiff, at the time the contract was entered into, had notice of such limitation upon the commissioners' power to contract, and the district's liability to respond. Reliance for these propositions is placed on the cases of Elmore v. Commissioners, 135 Ill. 269, 25 N. E. 1010, 25 Am. St. Rep. 363, Badger v. Drainage District, 141 Ill. 540, 31 N. E. 170, and Commissioners v. Kelsey, 120 Ill. 482, 11 N. E. 256.

In Commissioners v. Kelsey, 120 Ill. 482, 11 N. E. 256, the original assessment was found, in the execution of the work, to be insufficient, principally on account of an extra half mile of open ditch not contemplated in the original assessment. Thereupon an additional assessment was made. The contention of the landowner was, that the original assessment had equalled the benefits conferred; and, whether this was true or not, the commissioners had, by making one assessment, exhausted their powers. The Court held the second assessment valid, subject to its not exceeding the benefits conferred; saying on that topic, that benefits were an essential element to sustain an assessment, and that, in the absence of benefits, no assessment could be imposed.

Elmore v. Commissioners, 135 Ill. 269, 25 N. E. 1010, 25 Am. St. Rep. 363, was a case, where, after the assessment on Elmore's land, and the payment of such assessment and the construction of the ditch, the commissioners, without Elmore's knowledge or consent, proceeded to enlarge the boundaries of the district, so that a much larger volume of water than originally contemplated was gathered and discharged into the ditches constructed. The ditches proved insufficient to carry off the additional water, and Elmore's land was in consequence submerged, and his crops destroyed. Elmore's suit was for damages. The Court held that the action would not lie, because it was based solely, either upon the tortious act of the commissioners in enlarging the district, or upon the negligence or mis-

120 F.—14

conduct of the commissioners, which could only have consisted in their failure to provide ditches large enough to carry off the additional water.

Badger v. Drainage District, 141 Ill. 540, 31 N. E. 170, was a case of a contractor, who, for a specified sum of money, removed a dam across a creek in the district and brought suit to recover the contract price. To meet this liability an assessment had been made by the commissioners, but was enjoined at the instance of one of the landowners, and no other assessment was levied. The Court held, that as the district was first organized, there was no provision for the removal of the dam, and, therefore, no power in the commissioners to contract for its removal; that before the commissioners could make any contract in that respect, there must be a hearing in the County Court upon plans, specifications and estimates of cost, to which all the parties to be affected should be made parties; and upon this ground held that the district was not liable.

It will be seen that the case under consideration falls under neither of these rulings. The contract on which suit was brought in the Court below is not outside of the original plans approved by the County Court; nor is it a suit to recover damages for the tortious act of the commissioners; nor will a result favorable to plaintiff in error be an appropriation of money beyond the benefits conferred. We feel at liberty, therefore, to regard the case presented as one not ruled upon by the Supreme Court of the State of Illinois. The inquiry, then, arises, Is the district, within the contemplation of the Levee Act, liable for damages arising from such breach of contract as is here shown—a contract that the commissioners had the power to enter into and to perform?

The act of the General Assembly of the State of Illinois, known as the "Levee Act," approved May 29th, 1879, is intended to provide for the reclamation of large bodies of swamp and overflowed lands, and their consequent improvement as farm lands, by a system of mutual enforced contribution by those benefited. It is in this way a matter of public concern, undertaken under, and by means of the taxing powers of the state.

The machinery set up by the statute, to put such power into operation, provides, that the improvement shall not be undertaken unless petitioned for by a majority of the owners of the land within the proposed district, representing at least one-third in area of the lands to be affected; and that the County Court of the County where the land is situated, shall be the tribunal to hear and determine whether the proposed work is necessary or useful.

The provision for assessments upon the adjoining lands contemplates that all the parties to be assessed shall be made parties to a hearing, which shall be by a jury, wherein it shall be determined, considering both damages and benefits, the amount to be paid by each owner of the lands affected. The verdict of the jury, when confirmed by the court, practically amounts to the levy of a tax against the lands.

The statute provides, that the district thus created, and with such powers, shall be a body corporate, with power to contract and be

contracted with, sue and be sued, plead and be impleaded, and to do and perform in its corporate name, all such acts and things as may be necessary for the accomplishment of the purposes of the act; the administration of these powers being entrusted to three competent persons, denominated commissioners, who shall lay out and construct the work, collect and use the money, under the direction and approval of the court, and provide, from time to time, as appears necessary, new assessments, additional to the previous assessments, when the orignal assessments are found inadequate to the completion of the work,—provided that the total assessments shall not exceed the total benefits adjudged.

The corporation thus created is, doubtless, one strictly in invitum. It is to be classified, in this respect, with counties, townships, school districts, road districts and other quasi involuntary corporations, as distinguished from municipal corporations or private corporations. It is a subdivision, merely, of the general powers of the state, for the purposes of civil and governmental administration. But though a corporation, in invitum, the district remains liable at the suit of others to the extent contemplated in the law of its creation. The district is expressly given power to contract and be contracted with, to sue and to be sued. That its liability to suit does not extend to tortious acts of the commissioners, nor to acts not performed in furtherance of a duly empowered contract, is no test that the failure of the commissioners to perform a contract binding on the district shall not make the district liable for the results.

Unquestionably, the commissioners had power to make the contract under which the plaintiff in error claims. To that contract the district is bound as principal. Unquestionably, the commissioners had power to appropriate moneys collected on assessments in the execution of such contracts; the assessments were levied and appropriated to that very end. Had the plaintiff in error, upon the commissioners' failure to furnish the right of way, thrown up his contract, the commissioners could, within the power already granted, have provided and paid for the completion of the ditch, even at the increased cost arising from the frozen condition of the ground; and could, in furtherance of such purpose, have employed the money already appropriated for the construction of the ditch. This is the practical equivalent, so far as the landowners are concerned, of paying the plaintiff in error his just damages, and allowing him to complete the ditch under the contract already in existence. It distinguishes this case, therefore, in practical result, from the cases already cited.

The statute under which the district is created contemplates, in our opinion, that the district shall not only be held to perform its contracts, but to pay damages arising from its failure to perform. No reasonable construction other than this can be given to the bestowal of powers to contract and be contracted with, to sue and be sued. The contract is an entirety. As such it is incapable of subdivision so that one part of the obligation assumed may be valid, and the other parts invalid. If it bind the parties at all, it binds them to the fulfillment, not of part, but of all the obligations assumed.

Unquestionably, the district was under contract obligation to furnish the right of way. This carried with it, as a necessary incident, the obligation, either to furnish the right of way in apt time, or to make the plaintiff whole for its failure so to do. To hold otherwise would be to say that, though the plaintiff in error was bound, the district was not bound; which is only another way of saying, that neither was bound; and, therefore, there was no contract at all.

It is our judgment, that upon the findings embodied in this record, there was evidence tending to show liability upon the part of the district; in which event it was error, at the conclusion of plaintiff's evidence, to enter judgment for the defendant. For this error the judgment must be reversed and a new trial granted.