## ARTHUR HOSMER

### v.

## THE HUNT DRAINAGE DISTRICT.

*Filed at Springfield November 1, 1890.*

1. DRAINAGE LAW—*proceeds of additional assessment—where to be applied—requisites of petition and notice.* A petition for leave to raise an additional sum by assessment for the purpose of repairing or strengthening and improving a levee, and the notice thereof, need not state where the money shall be expended when raised. It may be used outside of the district, under the order and direction of the court.

2. SAME—*modification of orders—notice.* Where the county court has once acquired jurisdiction, by proper notice, etc., of the matter of a special assessment of lands benefited, for the purpose of improving a levee, it may modify its orders from time to time, whenever necessary, until the matter is finally disposed of, without any further notice to the land owners.

3. PRACTICE—*taking case under advisement—entry of judgment as of a preceding term.* The county court, after the hearing of objections to the confirmation of special assessments upon lands in a drainage district, has the right to take the case under advisement for a reasonable time ; but the propriety of the practice of entering judgment at a succeeding term as of the one at which the hearing was had, will not be considered when no injury can result therefrom.

4. APPEAL—*judgment nunc pro tunc.* Where a county judge takes a case under advisement, and at a subsequent term gives judgment and directs it to be entered as of the preceding term, the parties will have the same right of appeal or to sue out a writ of error as if the judgment was rendered at such subsequent term, and also the right to a bill of exceptions, on proper application.

WRIT OF ERROR to the County Court of Hancock county; the Hon. L. Y. SHERMAN, Judge, presiding.

Mr. G. EDMUNDS, Mr. W. C. HOOKER, and Mr. W. H. MANIER, for the plaintiff in error.

Mr. WILLIAM N. GROVER, and Mr. D. MACK, for the defendant in error.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a writ of error, brought by Arthur Hosmer, to reverse a judgment of the county court of Hancock county, confirming an assessment in the Hunt Drainage District, in Hancock county, on June 14, 1887, as of April 6, 1887.

The organization of the Hunt Drainage District, embracing $16,039\frac{12}{100}$ acres of land, is conceded. It is also conceded that an assessment of $65,311.78 was made against the lands of the district, and confirmed January 20, 1880. This is called the first assessment, and its validity is not called in question by this proceeding. On the 24th day of August, 1881, a petition for a second assessment was filed in the county court, and due notice given for a hearing on September 19, 1881. This petition was filed under the Drainage act of May 29, 1879, as amended by the act of May 24, 1881. Laws of 1879, p. 120; Laws of 1881, p. 79.

It is insisted that the petition and notice of August 24, 1881, for the second assessment, related only to work proposed to be done within the district in Hancock county, and did not authorize the orders of May 5, 1884, or November 18, 1886, hereinafter set out, for assessments to pay for work out of the district, and that such orders are void. The petition alleged that a levee had been constructed, giving a description thereof. It then averred that the levee was not sufficiently strong, nor of sufficient height, to protect the lands in the district, and ought to be strengthened, giving a detailed description of the proposed improvement, concluding with a prayer for an order for such additional work, and for a jury to assess damages and benefits occasioned by the construction of the work.

Section 2 of the act of May 29, 1879, authorized a petition to be filed for a second assessment to pay for improvements of a levee, and provides what the petition shall contain, as follows: "If the purpose of the owners is the repair and maintenance of a ditch or ditches, levee or levees, or other work

heretofore constructed under any law of this State, said peti-
tion shall give a general description of the same, with such
particulars as may be deemed important." Section 3 of the
act, as amended by the act of May 19, 1881, provides that the
county clerk shall give three weeks' notice of the presentation
and filing of the petition, by posting notices, and publication
in a newspaper at least once a week for three successive weeks.
The section also provides what the notice shall contain. Sec-
tion 4 of the act of 1879 provides: "The county court in
which such petition shall be filed, may hear the petition at
any probate term, and may determine all matters pertaining
thereto under this act, and may adjourn the hearing from
time to time, or continue the cause, for the want of sufficient
notice, or other good cause." Section 5 of the act of 1879, as
amended in 1881, provides for a hearing and the appointment
of three commissioners. Section 9 of the act of 1879 provides,
that in case the prayer of the petition is for the purpose of
repairing and maintaining a levee theretofore constructed, it
should be the duty of the commissioners to examine the levee,
and report to the court certain matters specified in the section.
Section 11 provides: "If the commissioners shall find that
the proposed work  *  *  *  can be done at a cost not exceed-
ing the benefits, they shall proceed to have the proper surveys,
profiles, plans and specifications thereof made, and shall re-
port their conclusions, and a copy of such surveys, plans and
specifications, to the court."

Under the foregoing provisions of the act the petition for a
second assessment was filed, and notice given as required by
the statute. The petition was heard by the court, and an
order entered requiring the commissioners of the district to
prepare surveys, profiles, plans and specifications of the pro-
posed work, and report to the court, with their conclusions.
On the 16th day of June, 1882, the commissioners filed their
report, in which, among other things, they estimated the cost

of the improvement proposed to be made on the levee, at the sum of $120,000, besides $95,000 for interest on bonds to be issued to raise money for the work. Upon filing the report, no immediate action was taken by the court upon it. Subsequently, and on September 18, the commissioners filed an amended report, reducing the estimated cost of the work from $120,000 to $75,000. Thus far no objection is made to the proceedings. On May 5, 1884, the court modified the report, and reduced the estimated cost of the work from $120,000 to $75,000, and as modified the report was approved and confirmed. The order also contained the following:

"Whereas, it is estimated by said commissioners that said Hunt Drainage District may be better protected from overflow by joining with a drainage district in Adams county, Illinois, and that if proper arrangements can be made between said Hunt Drainage District and any district in Adams county, aforesaid, to accomplish that end, the expense of constructing proper levees and drains will thereby be lessened $9000 of said bonds:—

"Now, to accomplish this end, said commissioners are hereby authorized to use the bonds in this order authorized, not exceeding $34,000, in aid of the construction of the levee, cross-levee, or other necessary work to protect said Hunt Drainage District from overflow, as the said commissioners, in their judgment, shall deem best for the interest of their said district. And in case such an arrangement can, by reasonable diligence on the part of said commissioners, be made to protect said Hunt Drainage District from damage by overflow, by the construction of levees or other works in said county of Adams, then said commissioners shall not issue over $66,000 of the bonds in this order authorized, and the tax to pay interest, etc., proportionally reduced. And the issue of said bonds above said $66,000 shall in no event be made without the approval of this court, upon a showing by said commissioners that they

are unable to make reasonable and proper arrangements for the construction of said work in Adams county, as above contemplated."

On November 4, 1886, the commissioners reported to the court that they had entered into a contract with Lima Lake District, in Adams county; ·that under the contract they were to expend $30,000 in bonds in making the improvement in Lima Lake District; that it will be necessary to expend the full sum of $75,000 in the two counties. The court approved the report, and ordered that the sum of $75,000 be applied in the construction of the work, as provided in the contract entered into between the two districts, and ordered that the benefits and damages be assessed by a jury.

If the petition had contained an allegation that the money to be raised was required to be used for an improvement in the two districts, and had been followed by a notice of an application for such an improvement, it is not claimed, in the argument, that the order authorizing the expenditure of money out of the district would be illegal. The object of the petition was to raise money to improve and repair the levee. The filing of the petition and publication of notice as required by the statute, conferred jurisdiction on the county court. The question presented by the petition was, whether an assessment should be made to improve and repair the levee,—not where or the precise mode in which the money should be expended. If the levee was in such a condition that the interests of the district required that it should be improved and repaired, for the purpose of protecting the lands of the district from being overflowed with water, then it was proper for the court, upon hearing the petition, to order such an amount to be raised as might be needed .to place the levee in proper repair,—and where the money should be expended was a matter which might be determined by the court. We think this is apparent from the language of section 37 of the act of 1885. (Laws of

1885, p. 124.) That section declares : "Said commissioners may use money arising from the collection of assessments, or coming into their hands as such commissioners, for the purpose of compromising suits and controversies arising under this act, * * * and for the purpose of constructing or repairing or maintaining any ditch, ditches, drains, levee or levees, within said district, or outside of said district, necessary for the protection of the lands and complete drainage of the same within such district : *Provided,* that the commissioners shall use such money under the direction and approval of the court." This section in plain terms authorizes money to be expended out of the district, under the order of the court, and we do not think that it was essential that the petition asking for an assessment should allege whether the money, when raised, was to be used in or out of the district. It was enough that the money was required to repair the levee, leaving the expenditure to be controlled by the order of the court.

It is also said, that the court had exhausted its power, under the petition and notice, when the order of 1884 was entered. The order of 1884 was not a final disposition of the matters arising under the petition. It was made, as its terms clearly establish, subject to contingencies which might arise in the future, and the court retained control over the case, to make such further order as might be required in the future.

It is also said, the order of 1886 ignores the order of 1884. So long as the court had control of the subject matter embraced in the petition, it had the power to modify or change any prior order entered in the case, and it was proper to do so whenever necessary to further the ends of justice.

It is also said, that both the order of 1884 and that of 1886 direct a sum certain to be assessed against the lands, regardless of benefits, and hence they are without authority of law. This is a misapprehension of the meaning of the orders. As we understand the orders, they do not undertake to direct the

assessment of any amount on the lands of the district. They limit the amount that may be raised, but the assessment of the amount of benefits which would arise from the improvement was left where the law placed it,—for the determination of a jury which might afterwards be selected for that purpose.

It appears from the record, that the jury selected to assess the benefits made the assessment, and the assessment roll was returned for confirmation in February, 1887. Objections to the confirmation were heard at the March term of the court, 1887, and the court held the application for confirmation under advisement until June 14, when the court overruled the objections, confirmed the assessment, and ordered the clerk to enter a judgment as of the March term, when the cause was submitted to the court, and it is insisted that the court had no power to enter judgment in June as of the March term. The court, after the hearing at the March term, had the right to hold the case under advisement for such a reasonable time as might enable the court to properly dispose of the case. But whether it was regular or good practice to enter the judgment in June as of the March term, it will not be necessary to determine, as the manner in which the judgment was entered did not in the least injure the plaintiff in error, or deprive him of any right. He had the same right to appeal or sue out a writ of error as if the judgment had been entered as of the June term of court; and, we may also add, that on proper application he would have been entitled to a bill of exceptions preserving the evidence.

The judgment of confirmation will be affirmed.

*Judgment affirmed.*