(No. 14470.—Decree affirmed.)
C. W. CARR, Appellant, *vs.* THE CITY OF ATHENS, Appellee.

*Opinion filed April 19, 1922—Rehearing denied October 21, 1922.*

1. MUNICIPAL CORPORATIONS—*when bonds are issued for a cor-*
*porate purpose.* A municipal corporation has power, by ordinance
and an affirmative vote of the people, to issue bonds to pay the
cost of constructing a transmission line beyond the city limits to
convey electric current purchased by the city from a corporation
manufacturing electric power beyond such limits.

2. SAME—*a city may purchase supplies outside of its corporate*
*limits.* It is essential to the existence of a local municipality that
it shall have a certain territory in which it may exercise its gov-
ernmental powers, but whenever it is necessary, in the exercise of
such powers, to go beyond the corporate limits it may do so with-
out express authority, and in its business relations a city is not
confined to the corporate limits in the purchase of needed supplies.

3. SAME—*when question of right of city to sell electric current*
*is not involved.* On a bill to enjoin a city from issuing bonds to
pay for the construction of a power transmission line to another
city from which it is to purchase electric current, the question of
the power of the latter city to sell electric current is not involved
where such city is not a party to the suit.

THOMPSON, C. J., CARTER and DUNN, JJ., dissenting.

APPEAL from the Circuit Court of Menard county; the
Hon. GUY R. WILLIAMS, Judge, presiding.

G. E. NELSON, for appellant.

B. L. CATRON, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The appellant, C. W. Carr, filed his bill in this case in the circuit court of Menard county against appellee, the city of Athens, praying for an injunction restraining the city from issuing its bonds in the principal sum of $25,000 in pursuance of an ordinance and an affirmative vote at an election for the purpose of constructing a transmission line to connect with the municipal power plant of the city of Springfield, to obtain a supply of electric light, heat and power for the use of the city and its inhabitants and constructing an electric distribution system in the city. The defendant demurred to the bill and the demurrer was sustained and the bill dismissed for want of equity. The bill was based partly upon constitutional grounds and an appeal was allowed to this court.

The bill alleged that the aldermen of the city, for the purpose of securing a favorable vote at the election at which the proposition to issue the bonds was submitted to the voters, grossly misrepresented the proposition contained in the ordinance and falsely and fraudulently represented that the city was without adequate provision for furnishing electric current, and that the distribution system and transmission line could be constructed and necessary equipment installed for $25,000, when, in fact, it would require a much larger sum. It is admitted by counsel for the appellant that these averments of fraud, misrepresentation, mistake of fact or impracticability of the project could not be inquired into by the court and furnish no sufficient basis for the relief prayed for.

It was also alleged as a basis for an injunction that the Municipal Ownership act (Laws of 1913, p. 455,) and the ordinance providing for the construction of the transmission line were void because both were in violation of section 13 of the bill of rights. That section of the bill of rights prohibits the taking or damaging of private property

for public use without just compensation, and the bill did not allege that any of complainant's property would be so taken. Manifestly it would not, and, even if it would, the constitutional provision would only require that just compensation should be ascertained by a jury. The taking of private property for public use is a lawful taking and subject only to the provision that just compensation shall be ascertained. Section 13 has not even a remote connection with the contract between the city of Springfield and the city of Athens or its execution.

Counsel for appellant also says that the contract of the city of Springfield to furnish electric current to the city of Athens is an illegal contract and cannot be enforced because the Municipal Ownership act, purporting to grant this power to the city of Springfield, is unconstitutional and void. No provision of the constitution is mentioned in support of the argument, but the question is not involved and cannot be considered in this case because the city of Springfield is not a party and its right to enter into the contract cannot be determined. The city of Springfield established an electric power plant at the municipal waterworks stationed on the Sangamon river, north of and outside of the corporate limits of the city, and it is from this plant that an electric current is to be furnished to the city of Athens. The Springfield Gas and Electric Company, a private corporation engaged in the production and sale of electricity in the city of Springfield, filed its bill for an injunction against the city, charging that the Municipal Ownership act was void because in violation of constitutional rights. The bill was dismissed for want of equity and the decree was affirmed by this court. (Springfield Gas and Electric Co. v. City of Springfield, 292 Ill. 236.) The act was there held to be free from constitutional objection so far as it was material to the issues in that case, but it was said that the question whether or not the city could sell its product outside of the corporate limits was not involved and was not

proper to be considered in that case. By its contract with the city of Athens the city of Springfield has exerted the power claimed to be given by the Municipal Ownership act to sell electricity outside of the corporate limits, and its right to so dispose of electricity and to enter into the contract cannot be considered or decided in a case to which it is not a party and cannot be heard in defense of its right. The only question which can be considered is whether the city of Athens has power to purchase electricity outside of its corporate limits, and it is asserted that the ordinance contravenes section 1 of the fourteenth amendment to the Federal constitution because it attempts to authorize the levy of taxes for other than a corporate purpose. It is plain that the issue of bonds and levy of taxes to pay them are for a strictly corporate purpose. There is no limitation by statute or in reason upon the power of a city to purchase needed supplies outside of its own limits. It is essential to the existence of a local municipality that it shall have a certain and defined territory in which it may exercise its governmental powers, but whenever it is necessary, in the exercise of such powers, to go beyond the corporate limits it may do so with or without express authority, as in the case of obtaining water supply for fire protection and the use of its inhabitants, procuring an outlet for a sewer to promote the public health, or the establishment of a pest-house. That power has been exercised by the city of Springfield in the establishment of municipal waterworks and an electric power plant outside of the corporate limits of the city, and the like power has been exercised by very many municipal corporations and the right sustained. In its business relations a city is not confined, in the purchase of needed supplies, to the limits of the city but it may purchase them wherever they can be obtained to the best advantage. Wherever it is found essential to the exercise of corporate powers, a city may go outside of the corporation to accomplish that result. *City of Champaign* v. *Harmon,* 98

Ill. 491; *Shreve v. Town of Cicero,* 129 id. 226; *Cochran v. Village of Park Ridge,* 138 id. 295; *Maywood Co. v. Village of Maywood,* 140 id. 216; 4 McQuillin on Mun. Corp. 3825.

The decree is affirmed.

*Decree affirmed.*

THOMPSON, C. J., CARTER and DUNN, JJ., dissenting:

As we view this case, a question necessarily arising on the record is, Is a municipal corporation legally authorized to sell the product of its public utility to another separate and distinct municipality miles outside the corporate limits of the municipality owning the public utility? The court says that this question is not involved because the city of Springfield is not a party to this suit. We do not consider that that state of the record disposes of the proposition that the tax-payers of the city of Athens are being compelled to pay for a transmission line to be built for the purpose of conveying a commodity from a municipally owned electric plant which has no authority to sell the product. If the city of Springfield has no authority to sell the product of its plant to the city of Athens, then the tax-payers of the city of Athens are being compelled to pay for the construction of a wholly useless utility. The tax-payers of the city of Athens therefore have the right to have the question above stated determined before the city of Athens uses the public fund to construct the proposed transmission line. If the city of Springfield is a necessary party to the determination of the question involved, the bill should not have been dismissed upon the merits on sustaining the demurrer, but the court should have required the city of Springfield to be made a defendant. *McMechan v. Yenter,* 301 Ill. 508.

The court says that it was held in *Springfield Gas and Electric Co. v. City of Springfield,* 292 Ill. 236, that the Municipal Ownership act was free from constitutional objection so far as it was material to the issues in that case. The sole question considered by this court in that case was

whether the clause in the Public Utilities act excepting from the provisions of that act public utilities owned by municipalities was in contravention of the State and Federal constitutions. This court expressly stated in its opinion that the constitutionality of the Municipal Ownership act was not questioned, and that the question whether the city of Springfield had a right to "sell its product to persons residing outside its corporate limits" was not in issue in the case and that it would not be considered or decided by the court. It was said in that case (Italics ours) : "The Municipal Ownership act is a complete act within itself, authorizing cities to acquire, own and operate public utilities *within their borders* and to regulate the same and fix rates and charges as aforesaid, and the act furnishes the reason for excepting such public utilities from the jurisdiction of the Public Utilities Commission." The court was unanimous in holding that in operating an electric light plant and selling electricity to individuals or corporations the city was not exercising its governmental powers but its proprietary rights, and that its duties and liabilities in that regard were the same as those imposed by law upon individuals or private corporations engaged in the same business. The court was also unanimous in deciding that the exception of municipalities owning and operating public utilities from the operation of the Public Utilities act grants to such corporations a special privilege, and that the exception contained in said act would be obnoxious to section 22 of article 4 of our constitution unless there existed some reasonable basis having reference to the object of the legislation for placing such municipalities in a class by themselves. The court divided on the question whether this reasonable basis existed. The opinion of the majority, which was affirmed by the Supreme Court of the United States, (42 Sup. Ct. 42,) was that there was a substantial distinction between municipally owned and privately owned public utilities, which furnished a reasonable and proper basis for the action of the legislature in

excepting the former from the regulation afforded by the Public Utilities act. In the discussion it was said that the protection afforded the public by the Public Utilities act was not necessary when the utility was owned and operated by a municipality, the theory being that the consumers would be protected from excessive rates and unjust discrimination and undue preference in rates between different consumers by the city council, which under the Municipal Ownership act was given authority to establish rates to be charged by the municipally owned public utility, the city not being allowed to operate.the public utility at a profit.

The regulation of rates under the Municipal Ownership ·act is by the city council, which represents the city and the inhabitants within the corporate limits of the city. The Public Utilities (now Commerce) Commission represents all the inhabitants residing within the boundaries of the State. If the decision in the *Springfield case, supra,* is extended to cover a situation where a municipally owned public utility sells its product to persons outside the corporate limits, then such persons have no representation on the body that fixes the rates to be exacted from them for service and there is no law protecting them from unjust discrimination. There is no provision in the Municipal Ownership act requiring that the rates fixed for service rendered by municipally owned public utilities shall be just and reasonable and uniform or that the service shall be adequate or efficient. After we leave the corporate limits of the city owning the public utility, every reason given as the basis for the constitutionality of the exception of such utility from the operation of the Public Utilities act is no longer present. That this was the view of the court at the time the opinion was filed in the *Springfield case, supra,* is indicated by the fact that the court expressly stated that the question whether the city of Springfield had a right to sell its products to persons residing outside its corporate limits was not before the court and would not be considered.

Section 8 of the Municipal Ownership act provides that the city may borrow money and issue negotiable bonds therefor, pledging the faith and credit of the city, for the purpose of acquiring a public utility. (Hurd's Stat. 1921, p. 2544.) As was said by the Supreme Court of the United States in the case cited: "The municipal corporation is allowed to go into the business only on the theory that thereby the public welfare will be subserved." How the interests of the citizens of the city of Springfield are to be subserved by permitting the product of its public utility to be sold to the citizens of another city at a bare operation and maintenance charge is a question we are not able to answer. The citizens of Springfield have not authorized by their vote the sale of their product to another municipality. They are required to assume all liability for the failure of the project and are not permitted to sell the product at a price high enough to yield a profit. According to the contention of appellee a majority of the voters of the city of Springfield could authorize the city to build a plant sufficiently large to supply the city of Springfield and its inhabitants and all the surrounding municipalities and inhabitants thereof so long as the amount of the product sold outside the corporate limits did not exceed the amount of the product sold inside the corporate limits, and could pledge the faith and credit of the city to pay for a plant of that capacity, and the minority thereof, even though they paid three-fourths or more of the taxes within the city, would not be protected against the liability of loss from such a hazardous undertaking. If this argument is sound with respect to the city of Springfield it is sound as applied to the city of Chicago, and the consumption of the products of public utilities in Chicago is so great that a municipally owned plant there might be constructed of such size that it could supply practically all of the State of Illinois and yet not sell outside its corporate limits a major portion of its products. The city council of Chicago would then indirectly fix

the rates to be paid by the people downstate for their pub-
lic utility service where the Chicago service was used. Such
a contention has no basis in reason, principle or authority.
When the legislature authorized cities to sell the product of
their public utilities outside the corporate limits it was per-
mitted only as an incident to the selling within the corpo-
rate limits. There might be no constitutional objection to
selling to a factory that lay partly within and partly with-
out the corporate limits, or to an occasional home that
was, in fact, outside the corporate limits but which was so
close to the city as to be considered a part of it for limited
purposes. When we go beyond this the city is permitted
to enter the commercial field for commercial purposes, and
that it has no right to do.

Section 12 of the Municipal Ownership act provides
that charges fixed for the service rendered by a municipally
owned plant shall be high enough to produce a revenue suf-
ficient to bear all costs of maintenance and operation, and
to meet interest charges on bonds and certificates issued on
account thereof, and to permit the accumulation of a sur-
plus or sinking fund that shall be sufficient to meet all out-
standing bonds or certificates at maturity. In the present
case we have two municipalities to consider. The city of
Springfield must charge the city of Athens and its other
customers a rate high enough to meet all the costs and
charges just enumerated, and the city of Athens must charge
its inhabitants enough to pay its proportionate share of the
cost of the operation and maintenance, etc., of the Spring-
field plant, and on top of that enough to pay the cost of
operation and maintenance, etc., of its own plant. Mani-
festly, therefore, the inhabitants of the city of Athens will
have to pay a considerably higher rate than the inhabitants
of the city of Springfield for service from the same plant.
Furthermore, the inhabitants of the city of Athens, or the
city council, will have nothing to say about the rate they are
to pay or the kind of service they are to receive, both of

those questions being decided by the city council of Springfield. Of course, the city of Athens can discontinue the service and thereby destroy its own utility.

Municipal corporations exist primarily for governmental purposes. Certain proprietary rights have been recognized as necessary for the welfare of the inhabitants of the municipality. As we have said, cities are permitted to enter the commercial field solely for the purpose of subserving the interests of the public which they represent. To grant a city the right to enter the commercial field for the sale of a commodity outside its corporate limits is to enter a field of legislation fraught with mischief and danger. We know of no authority which recognizes the right of a city to compel its tax-payers to support a project which is not necessary for the betterment of the city or its inhabitants and which does not subserve the interests of either. Here the inhabitants of the city of Athens are being asked to contribute toward the building of a transmission line eighteen miles long to transmit the product of a public utility manufactured by another municipality, with no assurance that they will be given a just or uniform rate or adequate or efficient service. Furthermore, we are convinced that the city of Springfield has no right to furnish electric current for transmission over this line, and for that reason the city of Athens has no right to spend the tax-payers' money in building the line.

There are other questions presented by this record, one of which is, Can a municipality legally engage in the business of buying and selling a commodity which it does not manufacture? While these questions ought to be decided if the opinion of the court is to stand, we do not find it necessary to discuss them in this dissenting opinion.

We are of the opinion that the decree of the circuit court should be reversed, with directions to grant the prayer of the bill.