HUNT DRAINAGE DISTRICT, Appellee, *vs.* RICHARD HAR-
NESS *et al.* Appellants.

*Opinion filed April 24, 1925—Rehearing denied June 10, 1925.*

1. DRAINAGE—*a drainage district may exercise power of emi-
nent domain.* A drainage district is organized for a public pur-
pose, is a *quasi* municipal corporation and possesses authority to
exercise the powers necessary to carry out the purposes for which
it is organized, including the right to exercise the power of emi-
nent domain.

2. SAME—*drainage districts may exercise necessarily implied
powers.* A drainage district, as a municipal corporation, may ex-
ercise such powers as are necessarily implied in or incident to the
powers expressly granted, in order to carry out the purpose for
which it is organized.

3. SAME—*drainage district may condemn lands for construction
of diversion canals outside district—review.* Where necessary to
the protection and complete drainage of lands within the district,
a levee drainage district may condemn lands for the construction
of diversion canals to carry water around the district, and for such
purpose may spend money raised by assessments against lands in
the district; and where the commissioners have determined that
such canals are necessary and the county court has approved the
plans, the Supreme Court cannot say that they are not necessary
for the purpose.

4. SAME—*when change in plans cannot affect right of condem-
nation.* A change by the drainage commissioners in the plans as
approved by the court for the construction of a diversion canal
outside the district cannot affect the right to condemn land, where
there is no substantial change in the location of the ditch and the
owners whose property is to be taken are not injured or preju-
diced thereby.

5. SAME—*what is not an unreasonable time for the payment of
compensation for property taken.* Three years cannot be said to
be an unreasonable time in which to allow a drainage district to
pay for property taken in the construction of a diversion canal
outside the district where the payment must be made out of a spe-
cial assessment not yet confirmed, as the possession of the own-
ers will not be disturbed until the district takes possession, and
an owner who desires to sell may convey his rights in the con-
demnation judgment.

6. EMINENT DOMAIN—*courts interfere only with an abuse of power of condemnation.* Where the right of eminent domain exists, courts will not interfere with the exercise of the power except to prevent a clear abuse of it.

7. SAME—*time for paying compensation, when once fixed, can not be changed.* Where the time for payment of compensation for property taken has once been fixed by the court it cannot be subsequently changed or extended.

APPEAL from the County Court of Hancock county; the Hon. WARREN H. ORR, Judge, presiding.

MACK & MACK, WILLIAMS & WILLIAMS, HARTZELL, CAVANAGH, MARTIN & HARTZELL, and SCOFIELD & BELL, for appellants.

PLANTZ & LAMET, O'HARRA, O'HARRA & O'HARRA, and LYMAN LACEY, JR., for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

Hunt Drainage District, in Hancock county, was organized under the Levee act in 1879. It embraces 16,000 acres of land lying between the Mississippi river on the west and the bluffs on the east. Levees protect the district from overflow from the Mississippi river. Schuhart and Rocky Run creeks empty into the district at or near the foot of the bluffs. In April, 1923, the commissioners of the district filed in the county court of Hancock county a petition to condemn rights of way for the construction of diversion canals or ditches to carry the waters discharged into the district by Schuhart and Rocky Run creeks across lands lying outside the district. The owners of the lands sought to be condemned filed motions to dismiss the petition on the ground petitioners had no authority under the constitution or statute to appropriate lands lying outside the district for the purposes mentioned in the petition, and also because it was not shown by the petition that there had been any lawful effort to agree with the land owners,

or either of them, as to compensation for lands taken and damaged for the uses sought by petitioners. Answers were also filed setting up substantially the same defense, and also denial that the diversion ditches were necessary for the reclamation of the lands in the district. Before a jury was empaneled the court heard evidence on the preliminary question of the right to condemn the lands, and entered an order that petitioners had that right, and the land owners were given time to, and did, file cross-petitions. A jury was then empaneled, and after hearing the evidence returned a verdict awarding compensation to the respective land owners for lands taken and damages to lands not taken. Motion for a new trial was overruled and judgment rendered on the verdict, from which judgment this appeal is prosecuted by the land owners.

No error is assigned as to the adequacy of the compensation awarded. Some questions as to the regularity of the procedure are raised, but the principal contention of appellants is that appellee had no power to condemn appellants' lands which were outside the district, and that there was no necessity for taking the lands for the purposes that they were sought to be taken. The question here presented,—the right of the district to condemn land for diversion purposes,—has never been decided by this court.

A drainage district is organized for a public purpose and is a *quasi* municipal corporation and possesses authority to exercise the powers necessary to carry out the purposes for which it is organized. The constitution and statutes authorize a drainage district to raise funds to accomplish the objects for which it is organized, by special assessment, which is the power to tax, and a requisite of the power to tax is that the tax shall be for public purposes. A drainage district is therefore held to be a public corporation and has the right to exercise the power of eminent domain for proper purposes. (*Havana Township Drainage District* v. *Kelsey,* 120 Ill. 482; *Elmore* v. *Drainage Comrs.*

135 id. 269; *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* v. *Polecat Drainage District,* 213 id. 83; *City of Joliet* v. *Spring Creek Drainage District,* 222 id. 441; *Hutchins* v. *Vandalia Drainage District,* 217 id. 561; *Smith* v. *Clausen Drainage District,* 229 id. 155.) It is well settled, as stated by Dillon in his work on Municipal Corporations, that in addition to the powers expressly granted them, such corporations may exercise such powers as are necessarily implied in or incident to the powers expressly granted. (*City of Chicago* v. *M. & M. Hotel Co.* 248 Ill. 264.) "A drainage district necessarily possesses the implied powers essential to carry out the express powers granted." (*Spring Creek Drainage District* v. *Elgin, Joliet and Eastern Railway Co.* 249 Ill. 260.) Such corporations are expressly authorized by section 37 of the Levee act to expend the money raised by the corporation "for the purpose of constructing or repairing or maintaining any ditch, ditches, drains, levee or levees within said district or outside of said district, necessary to the protection of the lands and complete drainage of the same within said district," under the approval of the court.

*Hosmer* v. *Hunt Drainage District,* 134 Ill. 360, involved a second assessment made in an already organized district, a part of which was to be expended on work outside the district. The court held the statute authorized the expenditure on work outside the district, under the order and direction of the court. The same question was considered in *Briggs & Frith* v. *Union Drainage District,* 140 Ill. 53, and the court held the drainage commissioners had the power to use money raised by assessment against the lands in the district, under the direction of the court, on the construction of work outside the district, necessary for the protection and complete drainage of the lands of the district. That decision was approved in *Binder* v. *Langhorst,* 234 Ill. 583. In that case the court said: "The power of the commissioners, under the direction of the court, to construct any

work necessary for the protection and ample drainage of the lands within the district, whether the work is to be done within or without the district, and to raise money by assessment for that purpose, is plainly given by the statute." The court also held the obligation and the power of the commissioners are the same under the Levee act as under the Farm Drainage act. *Bay Bottoms Drainage District* v. *Cache River Drainage District,* 295 Ill. 301, sustains the power of the commissioners to condemn lands outside the district for the complete drainage and reclamation of the lands in the district.

Appellants contend those cases go no further than to hold the commissioners may appropriate lands outside the district for outlet or similar purposes but do not authorize the construction of diversion canals upon the lands of others outside the district. It is conceded the statute authorizes the commissioners to appropriate lands outside the district for an outlet in the complete drainage of the district. The language of the statute does not restrict the power to appropriate lands outside the district to the providing of an outlet for draining the lands in the district. The commissioners are authorized to spend money raised by assessments against the lands in the district in the construction of work outside the district necessary to the protection and complete drainage of the lands within the district. The character of the work authorized is limited only to such work as may be necessary to completely protect and reclaim the lands in the district. Diversion canals outside the district, if necessary to the complete protection of the district, are as much authorized as the construction of outlet ditches outside of the district.

In the case of cities and villages, although no express authority is given them to appropriate lands outside the corporate limits for local improvements, we have held that under their necessarily or fairly implied powers they may, when necessary to secure an outlet, extend sewers beyond

the city limits,—and that, of course, carries with it the power to acquire the land necessary. (*Shreve* v. *Town of Cicero,* 129 Ill. 226; *Cochran* v. *Village of Park Ridge,* 138 id. 295; *Maywood Co.* v. *Village of Maywood,* 140 id. 216; *Callon* v. *City of Jacksonville,* 147 id. 113; *City of Rockford* v. *Mower,* 259 id. 604.) In *Carr* v. *City of Athens,* 304 Ill. 212, the court held that when it is necessary for a municipality to go beyond its corporate limits to obtain a water supply for fire protection and for the use of its inhabitants, or procure an outlet for a sewer to protect the public health, or the establishment of a pest house, it has the power to do so. In that case the court sustained the power of the city of Athens to construct and pay for a transmission line beyond the city limits to convey electric current purchased by the city from a corporation manufacturing electricity. We deem it unnecessary to refer to cases in other States deciding the same way.

Counsel for appellants argue that a city or village has authority to exercise governmental powers and a drainage district has no such authority. Both kinds of corporations have the express and necessarily implied or incidental powers to carry out the purposes for which they are organized. The protection and drainage of the lands within a drainage district are the objects and purposes of the organization of drainage districts. It would be idle to authorize their organization unless they were permitted to exercise powers necessary to effect the purposes for which they were organized. We are of opinion drainage districts, like cities and villages, have, in addition to the express powers granted, implied power necessary to the complete protection and drainage of the land.

But we are not required to rest this decision upon the implied power of appellee to appropriate lands of others outside the district, for the statute expressly confers upon the commissioners the authority to do that when necessary to the protection and complete drainage of the lands. Ap-

pellee had the lawful power to take and damage the lands of appellants if that was necessary to completely protect and drain the lands within the district.

It follows from the cases referred to and what we have said in this opinion, appellee had the right to condemn appellants' lands if required for the complete protection of the lands in the district, and that being so, courts will not interfere with the exercise of the power to condemn the lands except to prevent a clear abuse of it. The plan of the commissioners, which was approved by the court, provides for interior ditches and the construction of a pumping plant to get rid of surface and seepage water, and the diversion of Rocky Run and Schuhart creeks so as to carry around the district the waters brought down by them from the hills instead of emptying them in the district. The commissioners and engineer determined that was necessary to a complete reclamation of the lands in the district, and the county court approved the plans. This court cannot say the diversion channels were not necessary for that purpose.

The question of the power of courts to deny the right to condemn land on the ground that the exercise of the right is unnecessary was discussed in *Pittsburg, Ft. Wayne and Chicago Railway Co. v. Sanitary District,* 218 Ill. 286. The court said on page 290: "The question whether it was necessary that the petitioner acquire title to the strip of land sought to be taken in order that the object of its organization might be effected was a legislative and not a judicial question, and was one to be determined by the trustees of the sanitary district, and not by the court in which the condemnation proceeding was pending. The court in which such a petition is pending may rightfully determine whether the petitioner has the power to exercise the right of eminent domain; whether the property is subject to the right of eminent domain and is being taken for a public use; whether the power is being abused by the taking of an excessive amount of property, and other kindred questions.

which do not involve a determination of the necessity or the expediency of the taking of the lands sought to be condemned; but where the right to condemn exists, and the property is subject to the exercise of the right of eminent domain and is being condemned for a public use, and the right to condemn is not being abused, the court cannot deny the right to condemn on the ground that the exercise of the power is unnecessary or inexpedient, as the determination of that question devolves upon the legislative branch of the government, and is a question which the judicial branch of the government cannot determine.—*Smith* v. *Chicago and Western Indiana Railroad Co.* 105 Ill. 511; *Chicago and Eastern Illinois Railroad Co.* v. *Wiltse,* 116 id. 449; *Illinois Central Railroad Co.* v. *City of Chicago,* 141 id. 586; *Chicago and Alton Railroad Co.* v. *City of Pontiac,* 169 id. 155." In addition to the cases cited in support of that text, see, also, *City of Winchester* v. *Ring,* 312 Ill. 544, *Pittsburg, Cincinnati, Chicago and St. Louis Railway Co.* v. *Gage,* 280 id. 639, and *County of Mercer* v. *Wolff,* 237 id. 74.

Appellee made a *prima facie* case of necessity for condemning appellants' lands and no evidence was offered by appellants to the contrary. *Pittsburg, Cincinnati, Chicago and St. Louis Railway Co.* v. *Gage, supra.*

We have not overlooked *Ligare* v. *City of Chicago,* 139 Ill. 46, *Chicago and Eastern Illinois Railroad Co.* v. *Wiltse, supra,* and other cases cited by appellants. Those cases, and many others, hold the power of condemnation is harsh, against common right, and the grant of such power should be strictly construed, and when such power is attempted to be exercised, courts will determine whether the power exists and whether the use for which it is sought to condemn land comes within the power delegated by the legislature. Such cases are not in the slightest conflict with the other cases we have cited and with the view expressed in this opinion.

Appellants also contend that no sufficient effort was made by the drainage commissioners to agree with appellants upon compensation, and the proof was insufficient to support the allegations of the petition that the parties had been unable to agree. It is not denied the proof showed efforts were made by the commissioners to agree upon the compensation and they could not do so, but appellants contend the compensation attempted to be agreed upon was compensation for land taken and for damages to land not taken, combined. We regard it as wholly unnecessary to review the evidence upon that question. It abundantly sustained the allegations of the petition, and the claim that proof of a failure to agree on compensation for land taken and damages to land not taken was insufficient is without merit.

It is further contended there was a variance between the routes of the diversion channels as shown in the plans and order of court and as shown by the petition. The changes complained of were of slight character, and, as we understand it, affected only the lands of Burger, Clark and Jacobs. The change on the Burger land was in slightly moving the ditch so as to avoid a public highway. On the Clark land a slight change was made to avoid making a right-angle turn where Schuhart creek comes out of the bluffs. The change as to Jacobs' land was of a typographical error in description. There was no change in the line staked out and no substantial change of the location of the ditch. Appellants were not injured or prejudiced thereby. Such changes as were made the commissioners had a right to make. *Reynolds* v. *Milk Grove Drainage District,* 134 Ill. 268; *People* v. *Board of Supervisors,* 314 id. 256.

It is also claimed the county court erred in fixing the time for payment of the compensation. By its judgment the county court allowed appellee three years from the date of the judgment to pay the compensation and damages. Appellants contend three years is an unreasonable

time and clouds their title until the compensation is paid and title vests in appellee, during which time the right to sell or encumber the land is interfered with. The statute authorizes the court to order the compensation fixed to be paid "within a reasonable time to be fixed by the court." What is a reasonable time must in some measure depend upon facts and circumstances. In this case the payment must be made out of a special assessment not yet confirmed. That will necessarily involve considerable delay. We know from observation that such proceedings are subject to delay and frequently are delayed by appeals. It was important that sufficient time should be given for payment to afford the commissioners a reasonable opportunity, in the exercise of diligence, to procure the money. When the time for payment has been once fixed by the court it cannot be subsequently changed or extended. (*LaSalle County Electric Railway Co.* v. *Hill,* 260 Ill. 621.) We cannot say the time allowed for payment, in view of all the circumstances, is unreasonable. True, if the assessment proceedings are delayed by litigation it will not be the fault of appellants, as their land cannot be assessed, but until such time within the three years as appellee shall take possession appellants' possession will not be disturbed. We do not see how their right to sell or encumber the land will be materially affected. If they wish to convey it they can do so and confer upon the grantee the rights of the grantor in the condemnation judgment.

Presumably appellants were awarded sufficient compensation for their lands taken and for damages to the lands not taken, for they have not preserved the evidence upon that question in the bill of exceptions and have assigned no errors on the amount awarded them by the verdict and judgment.

The judgment is affirmed.            *Judgment affirmed.*